WILLIAM W. MANLOVE, Oregon State Bar ID Number 891607
Senior Deputy City Attorney
Email: william.manlove@portlandoregon.gov
Office of City Attorney
1221 SW 4th Avenue, Suite 430
Portland, OR 97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
     *Of Attorney for Defendants City of Portland,*
     *Portland Police Bureau, Officer Craig Dobson,*
     *Officer Sarah Payton, Officer Engstrom,*
     *and Officer Newhard*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **MATTHEW T MGLEJ**, | **3:15-cv-00096-MO** |
| **PLAINTIFF**, | |
| v. | **CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT** |
| **MULTNOMAH COUNTY, ET AL.,** | |
| **DEFENDANT.** | *Oral Argument Requested* |

Page  i  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
     OF LAW IN SUPPORT

# TABLE OF CONTENTS

I.    MOTION FOR SUMMARY JUDGMENT.................................................................1

II.   MEMORANDUM OF LAW IN SUPPORT ................................................................1

    A.    BACKGROUND .................................................................................................1

        1.    Mglej's Arrival at the Federal Courthouse and his Silent Protest .............1

            a.   The Clothing Arrangement ................................................. 2

            b.   The Posters ......................................................................... 3

            c.   The Violin Playing ............................................................. 3

            d.   The Nudity ......................................................................... 4

        2.    The Police Arrive, Inquire and Warn Mglej .............................................4

        3.    More Calls about Mglej's Nudity and the Decision to Arrest ...................5

        4.    The Police Return and Arrest Mglej ..........................................................6

        5.    The Police Drive Mglej to Jail ..................................................................7

    B.    PLEADINGS ......................................................................................................8

    C.    SUMMARY JUDGMENT STANDARD............................................................10

    D.    ARGUMENT ....................................................................................................10

        1.    Unlawful Arrest/Violation of the First Amendment................................10

            a.   First Amendment-Expressive Conduct ........................... 11

                i.    Facial Challenge ...................................... 14

                ii.   As-applied Challenge ............................... 15

            b.   Fourth Amendment – Unlawful Arrest ........................... 18

        2.    Fourth Amendment – Excessive Force ....................................................20

        3.    Malicious Prosecution as a Federal Claim................................................24

        4.    Fourth Amendment – "Cruel and Unusual Punishment"..........................25

        5.    Qualified Immunity...................................................................................26

            a.   First Amendment-Expressive Conduct/Fourth Amendment-
               Unlawful Arrest ............................................................... 27

             b.   Fourth Amendment- Use of Force ................................... 28

             c.   Malicious Prosecution as a Federal Claim...................... 29

        6.    Oregon Constitution - No Private Right of Action for Money Damages ..29

        7.    Battery......................................................................................................29

        8.    Assault......................................................................................................30

        9.    Negligence................................................................................................31

III.  CONCLUSION.............................................................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130 (9th Cir. 2000) ......................................................... 10

*Anderson v. Creighton*, 483 U.S. 635 (1987) ............................................................................ 26

*Arcara v. Cloud Books, Inc.,* 478 U.S. 697 (1986) ..................................................................... 27

*Arnsberg v. United States*, 757 F.2d 971 (9th Cir. 1985) ........................................................... 26

*Ashcroft v. al-Kidd,* __ U.S. __, 131 S.Ct. 2074 (2011) ............................................................. 26

*Atwater v. City of Lago Vista*, 532 U.S. 318 (2001) .................................................................. 22

*Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004)................................................ 24, 25

*Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991) ........................................................ 12, 13, 23

*Beasley v. City of Keizer*, 525 Fed. Appx. 549 (2013).............................................................. 26

*Bretz v. Kelman*, 773 F.2d 1026 (9th Cir. 1985)....................................................................... 24

*Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010) ................................................................ 22

*Bush v. City of San Diego*, 2010 WL 2465034 (S.D. Cal.)................................................... 14, 17

*City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000) ................................................................. 13, 27

*Dallas v. Stanglin*, 409 U.S 19 (1989)..................................................................................... 11

*Evans v. Multnomah Cnty.*, 2009 WL 1011580 (D. Or.)............................................................ 24

*Ewing v. City of Stockton*, 588 F.3d 1218 (9th Cir. 2009)......................................................... 26

*Forrester v. City of San Diego*, 25 F.3d 804 (9th Cir. 1993).................................... 21, 22, 23, 28

*Glenn v. Wash. Co.,* 673 F.3d 864 (9th Cir. 2011) ................................................................... 21

*Graham v. Connor*, 490 U.S. 386 (1989) ........................................................................... 20, 21

*Harper v. City of Los Angeles*, 533 F.3d 1010 (9th Cir. 2008).................................................. 19

*Heffron v. International Soc'y for Krishna Consciousness, Inc.,* 452 U.S. 640 (1981) ............... 27

*Heien v. North Carolina,* __U.S. __, 135 S.Ct 530 (2014)................................................... 18, 19

*Hope v. Pelzer*, 536 U.S. 730 (2002) ................................................................................. 28, 29

*Illinois v. Gates*, 462 U.S. 213 (1983) ........................................................................ 18

*Ingraham v. Wright*, 430 U.S. 651 (1977) .................................................................. 25

*Jimmie's Limousine Service, Inc. v. City of Oakland*, 2005 WL 2000947 (N.D. Cal.) ............... 10

*John v. City of El Monte*, 515 F.3d 936 (9th Cir. 2008) ................................................. 18

*Karboau v. Lawrence*, 2007 WL 114022 (D.Or.) .......................................................... 22

*Keenan v. Allen*, 91 F.3d 1275 (9th Cir. 1996) ........................................................... 10

*Kingsley v. Hendrickson*, __ U.S. __, 135 S.Ct. 2466 (2015) ....................................... 25

*Kleinman v. Multnomah County*, 2004 WL 2359959 (D.Or.) ............................................. 1

*Lassister v. City of Bremerton*, 556 F.3d 1049 (9th Cir. 2009) .................................... 18

*Leisek v. Brightwood Corp.,* 278 F.3d 895 (9th Cir. 2002) ........................................... 10

*Malley v. Briggs*, 475 U.S. 335 (1986) ...................................................................... 26

*Maryland v. Pringle*, 540 U.S. 366 (2003) .......................................................... 18, 20

*Nicholson v. Hyannis Air. Serv., Inc.*, 580 F.3d 1116 (9th Cir. 2009) ............................. 10

*Nunez by Nunez v. City of San Diego*, 114 F.3d 935 (9th Cir. 1997) ............................. 14

*Pearson v. Callahan*, 555 U.S. 223 (2009) ................................................................ 26

*S.D. Myers, Inc., City and County of San Francisco*, 253 F.3d 461 (2001) ...................... 14

*Scott v. Harris,* 550 U.S. 372 (2007) ........................................................................ 23

*Standish v. Woods*, 2004 WL 1379466 (D. Or.) ......................................................... 29

*Stanton v. Sims*, __U.S. __, 134 S.Ct. 3 (2013) ......................................................... 26

*Tennessee v. Garner*, 471 U.S. 1 (1985) ................................................................... 21

*Terry v. Ohio,* 392 U.S. 1 (1968) .............................................................................. 20

*Texas v. Johnson*, 491 U.S. 397 (1989) ............................................................... passim

*Torres v. City of Madera*, 648 F.3d 1119 (9th Cir. 2011) ............................................. 26

*U.S. v. Salerno*, 481 U.S. 793 (1987) ....................................................................... 14

*United States v. O'Brien,* 391 U.S. 367 (1968) ........................................... 11, 12, 17, 27

Page  iv  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
        OF LAW IN SUPPORT

*Villiarmo v. Aloha Island Air, Inc.,* 281 F.3d 1054 (9th Cir. 2002)................................ 10

*Westwood v. City of Hermiston*, 787 F. Supp. 2d 1174 (D. Or. 2011) ........................ 24

*Winters v. New York*, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948) ...................... 13

**State Cases**

*Bakker v. Baza'r, Inc.,* 275 Or. 245 (1976)................................................................ 29

*Ballard v. City of Albany*, 221 Or. App. 630 (2008)................................................... 30

*Blandino v. Fischel*, 179 Or. App. 185 (2002)....................................................... 24, 25

*Bollaert v. Witter,* 101 Or. App. 654 (1990) ............................................................. 30

*City of Portland v. Gatewood*, 76 Or. App. 74 (1985)............................. 14, 19, 23, 29

*Cook v. Kinzua Pine Mills Co.,* 207 Or. 34 (1956)................................................. 29, 30

*Gigler v. City of Klamath Falls*, 21 Or. App. 753 (1975)............................................ 30

*Hightower v. City and County of San Francisco*, 2013 WL 36115 (N.D. Cal.)..................... 13, 14

*Huffman and Wright Logging Co. v. Wade,* 317 Or. 445  (1993)................................ 19

*Hunter v. City of Eugene*, 309 Or. 298 (1990)........................................................... 29

*Ledford v. Gutoski*, 319 Or. 397 (1994)..................................................................... 24

*Rich v. Cooper*, 234 Or. 300 (1963) .......................................................................... 30

*State v. Plowman*, 314 Or. 157 (1992) ....................................................................... 19

*State v. Pollock*, 337 Or. 618 (2004) .......................................................................... 19

*State v. Soldahl*, 331 Or. 420 (2000).......................................................................... 19

**Federal Statutes**

42 USC Section 1983 ...................................................................................... 1, 8, 26, 31

**State Statutes**

ORS 131.005(11) ......................................................................................................... 25

ORS 161.205(5) ............................................................................................................. 9

ORS 161.205(5) ...................................................................................................... 9, 30

Page  v  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
            OF LAW IN SUPPORT

ORS 161.235(2) .................................................................................................... 9, 30

**Federal Rules**

Fed. R. Civ. P. 56(a) ..................................................................................... passim

**State Constitution**

Article 1, section 8 of the Oregon Constitution .................................................... 19, 20

**Portland City Code**

PCC 14A.10.010 (O) ............................................................................................ 5

PCC 14A.20.010 .............................................................................................. 18

PCC 14A.20.060 ................................................................................................ 6

PCC 14A.40.030 ....................................................................................... passim

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

## I.    MOTION FOR SUMMARY JUDGMENT

In accordance with Fed. R. Civ. P. 56(a) and LR 56-1, defendants City of Portland, Portland Police Bureau,[1] Officer Craig Dobson, Officer Sarah Payton, Officer Engstrom, and Officer Newhard, ("City defendants") move for summary judgment.

City defendants' motion has several bases.  First, plaintiff's nude demonstration was not protected expressive conduct under the First Amendment.  Secondly, City defendants' arrest of plaintiff was lawful because it was supported by probable cause.  Third, the video evidence submitted with this motion shows there is no genuine issue of material fact to support any claim for excessive force, assault, or battery.  Also, the individual City defendants are entitled to qualified immunity for any claim brought under 42 USC Section 1983.  Finally, plaintiff cannot bring any claim for damages under the Oregon Constitution, and has no claim for negligence.

In accordance with LR 7.1-1(a)(1)(A), City defendants made a good faith effort to resolve this dispute, but were unable to do so.  (*See* Declaration of William W. Manlove ("Manlove Decl."), ¶ 2.)

## II.    MEMORANDUM OF LAW IN SUPPORT

### A.    BACKGROUND

#### 1.    Mglej's Arrival at the Federal Courthouse and his Silent Protest

On May 23, 2014, plaintiff went to the public sidewalk in front of the federal courthouse at S.W. Third Avenue and S.W. Salmon Street in Portland to "demonstrate."  (*See* Docket 33, Amended Complaint ("Complaint"), ¶¶ 13-18.)  Upon arriving at the courthouse, plaintiff placed a violin, some posters, and some other possessions on the sidewalk.  (Manlove Decl., ¶ 3, Ex. 1, Deposition Excerpts of Matthew Mglej, July 28, 2015 ("Mglej Depo") 21: 8-16.)  Plaintiff then

---

[1] The Portland Police Bureau ("the Bureau") is not a distinct entity from the City of Portland itself.  Therefore, the Bureau is not amenable to suit.  The Court should dismiss the Bureau as a defendant.  *Kleinman v. Multnomah County*, 2004 WL 2359959*9 (D.Or.) (citing other cases from district finding that the Bureau may not be sued separate and apart from the City.)

Page  1  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

took off all his clothing and arranged the clothing into the form of a human figure on the

sidewalk.  (Manlove Decl., Ex. 1, Mglej Depo, 22:18 - 23:4.)  Plaintiff took off "every single bit"

of his clothing, so that he was "fully nude" with his genitalia completely exposed in front of the

federal courthouse.  (Manlove Decl., Ex. 1, Mglej Depo, 20:10 - 21:7.)  During his

demonstration, plaintiff did not speak or make speeches on any topic.  (Manlove Decl., Ex. 1,

Mglej Depo, 26:11-23, 27:15-18, 67:22 – 68:1.)  Rather, plaintiff's demonstration was "a silent

protest."  (Manlove Decl., Ex. 1, Mglej Depo, 68:4-8.)

### a.    The Clothing Arrangement

Plaintiff's purpose in arranging his clothing on the sidewalk was "to create a symbolic

strawman metaphor."  (Manlove Decl., Ex. 1, Mglej Depo, 23:19-23.)  Plaintiff meant his

clothing arrangement on the sidewalk to communicate this message:

> Q.    Was that arrangement of clothing, did you mean it to
> convey some type of message?
>
> A.    Yes.
>
> Q.    What type of message did you mean for your clothing to
> convey?
>
> A.    What type of message did I mean for my clothing to
> convey.  The message was a multi-themed message, which was
> representing the architects of humanity.  The suits and ties, the
> frivolous arrogance of forgetting our own humanity.  The
> representation that we're in a society that has reached farther than
> any known civilization, and we're still driven by our animalistic
> needs for sex, power.
>
> And we disguise this with ties and suits.  We hide behind our
> reality with suits and ties.  We hide our humanity.  The fact that we
> all have families, that we all have dreams, that we all require
> vacations, that we all seek something in life, and that this suit and
> tie has been designed to separate us from that.
>
> The metaphor of the suit and tie is our separation from that, and
> that we need to become aware of that; that no longer seek for
> money, no longer seek for greed, but seek for humanity and
> happiness, reorganize our-reorganize human thoughts to finally
> create a purpose which serves our intellect and not our greed.

Page  2  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
          OF LAW IN SUPPORT

> Q.     Anything else?
>
> A.     I can go on, but I think that sums up the base of the
> question.

(Manlove Decl., Ex. 1, Mglej Depo, 24:11 - 25:16.)

Plaintiff's target audience for this message was "the human race." (Manlove Decl., Ex. 1, Mglej Depo, 25:17 - 26:2.)

### b.     The Posters

After plaintiff arranged his clothing on the sidewalk, he created three posters "during the protest" and leaned them against the wall of the courthouse and set them on the sidewalk. (Manlove Decl., Ex. 1, Mglej Depo, 34:25 - 35:12.)  On one of the posters, plaintiff wrote: "For those who are willing to die for war, I'm willing to die for peace."  (Manlove Decl., Ex. 1, Mglej Depo, 35:25 - 36:9.)  On the other two posters, plaintiff wrote quotations from the former president of the Islamic Republic of Iran, Mahmoud Ahmadinejad.  (Manlove Decl., Ex. 1, Mglej Depo, 36: 10-17; s*ee also* Complaint, ¶ 18.)  One quote from Mr. Ahmadinejad was something about "the tools of power and money should be used for strengthening human bond, connection, and spiritual growth, not for the use of control, domination and greed."  (Manlove Decl., Ex. 1, Mglej Depo, 36:18 - 37:1.)  The other Ahmadinejad quote was something to the effect : "How can there be justice when the minister of justice and the adjudicator are on the same side?" (Manlove Decl., Ex. 1, Mglej Depo, 37:2-6.)  Plaintiff identified Mr. Ahmadinejad on the posters as the source of the quotations.  (Manlove Decl., Ex. 1, Mglej Depo, 37:7-16.)  Like his clothing arrangement on the sidewalk, plaintiff's target audience for the posters was "the human race." (Manlove Decl., Ex. 1, Mglej Depo, 40:23- - 41:2.)

### c.     The Violin Playing

As part of his demonstration, plaintiff also played a violin.  (Manlove Decl., Ex. 1, Mglej Depo, 66:19 - 67:5.)  He did this because he believed the "[v]iolin is very symbolic in American culture" and felt "it was fitting" to be part of his demonstration.  (Manlove Decl., Ex. 1, Mglej

Page  3  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
            OF LAW IN SUPPORT

Depo, 67:6-13.)

### d.    The Nudity

Plaintiff took off his clothing as part of his demonstration because he believed the law

allowed him to do so.

> Q.    All right.  So let's get to the nudity.  What -- Why did you
> –why did you take off your clothes?
>
> A.    What do you mean?
>
> Q.    Why—why did you take off your clothes as part of this
> demonstration?
>
> A.    Why did I take off my clothes as part of this
> demonstration? Because I was advocating my constitutional rights.
>
> Q.    What does that mean to you?
>
> A.    It means that I have rights that are granted to me.  And that
> I, for whatever reason – not reason, just I have a right to –to do that
> because it's protected."

(Manlove Decl., Ex. 1, Mglej Depo, 51:20 - 52:7.)

At deposition, plaintiff explained his nudity "was designed to be a symbolic metaphor of

transparency."  (Manlove Decl., Ex. 1, Mglej Depo, 52:8-13.)

### 2.    <u>The Police Arrive, Inquire and Warn Mglej</u>

At about 12:40 p.m., after the City had received calls about plaintiff's nudity, Portland

police officers arrived on scene, including Officer Sarah Payton.  (Declaration of Sarah Payton

("Payton Decl."), ¶¶ 5-6.)  Payton asked plaintiff what he was protesting, but he gave no answer,

or simply pointed to the posters.  (Payton Decl., ¶ 7.)  Later, Acting Lieutenant Craig Dobson

arrived on scene.  Dobson saw that plaintiff was nude, and saw that as plaintiff sat, stood, and

walked around his possessions scattered about him on the sidewalk, that plaintiff's genitalia was

plainly visible to the public.  (Declaration of Craig Dobson ("Dobson Decl."), ¶ 8.)

Lt. Dobson spoke with city attorney David Woboril and explained that plaintiff was nude

in front of the federal courthouse and claimed to be engaged in protest.  Dobson told Woboril he

Page  4  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
         OF LAW IN SUPPORT

was not clear what the protest was about, and told Woboril he believed he had probable cause to arrest plaintiff for violation the City's indecent exposure law, Portland City Code ("PCC") 14A.40.030, which states:

> It is unlawful for any person to expose his or her genitalia while in a public place[2] or place visible from a public place, if the public place is open or available to persons of the opposite sex.

Dobson told Woboril he was not going to arrest plaintiff at that time, but would arrest him if the City received additional calls about plaintiff's nudity. Attorney Woboril agreed with Dobson's course of action, and told Dobson he had probable cause to arrest plaintiff for violating the City's law. (Dobson Decl., ¶ 9.)

Lt. Dobson approached plaintiff and explained to him he was violating the City's law. Plaintiff told Dobson he was protesting. When Dobson asked what the protest was about, plaintiff refused to tell him. (Dobson Decl., ¶ 10, 17; see also, Declaration of Ryan Rees ("Rees Decl."), ¶ 8, Ex. 1, Initial Contact_14-41928-mglej_edited video.wmv ("Initial Contact video"), at 34:36-34:39 minutes.) Dobson told plaintiff the police would arrest him if the police bureau received more complaints about plaintiff's nudity. (Dobson Decl., ¶ 10; Rees Decl., Ex. 1, Initial Contact video.)

3.      More Calls about Mglej's Nudity and the Decision to Arrest

Over the next couple of hours, the police bureau received calls from citizens complaining of plaintiff's nudity. The calls expressed concern and alarm about plaintiff's nudity, and the complaints were from both pedestrians and motorists. (Dobson Decl., ¶ 12; Payton Decl., ¶ 9; Declaration of Ty Engstrom ("Engstrom Decl."), ¶ 7.) At least two people who complained about plaintiff's nudity had small children with them. (Payton Decl., ¶ 9.)

In light of the calls received by the police bureau, at approximately 3:15 p.m., Lt. Dobson

---

[2] PCC 14A.10.010 (O) defines "[p]ublic place" as " a publicly or privately owned place to which the general public has access and may include but is not limited to public property and areas of private property open to the public…"

Page  5  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
            OF LAW IN SUPPORT

decided to arrest plaintiff for violating PCC 14A.40.030.[3]  Dobson communicated his decision to Portland Police Sergeant Ty Engstrom and directed officers to arrest plaintiff.  (Dobson Decl., ¶ 12.)

### 4.    The Police Return and Arrest Mglej

Officer Payton and Sgt. Engstrom returned to the front of the federal courthouse.  (Payton Decl., ¶ 11; Engstrom Decl., ¶¶ 9, 10.)  Payton positioned her patrol car to record the arrest on her car's video camera.  (*Id.*)  Payton and Engstrom approached plaintiff, who was sitting on the sidewalk with his arms by his sides, eyes closed, legs crossed, and genitalia exposed to the public.  (*Id.*)  Payton and Engstrom each took one of plaintiff's hands, and moved them behind his back.  They then used Payton's handcuffs to handcuff plaintiff.  (Payton Decl., ¶ 11; Engstrom Decl., ¶ 10.)  As Payton was handcuffing plaintiff, she explained to him that he was under arrest for indecent exposure.  Payton double-locked her handcuffs and checked them for appropriate tightness to make sure the handcuffs would not tighten, and were put on properly.  (Payton Decl., ¶¶11, 17; s*ee also* Rees Decl., Ex. 1, 14-41928-mglej_Arrest.wmv ("Arrest video") at 1:01-1:11 minutes.)

Officer Payton and Sgt. Engstrom asked plaintiff to stand up and walk to the patrol car about 20 to 25 feet away.  Plaintiff refused to move.  Payton and Engstrom were able to lift plaintiff to his knees.  They again asked him to stand up and walk.  Plaintiff again did not say anything and did not comply.  Payton and Engstrom then each put an arm under plaintiff's armpits and lifted and carried him to the patrol car.  As they carried plaintiff, the tops of plaintiff's feet dragged along the sidewalk.  Plaintiff remained limp during the carry to the car, and did not say anything or otherwise express any pain or discomfort.  (Payton Decl., ¶ 12; Engstrom Decl., ¶¶ 10, 11; *See also* Rees Decl., Ex. 1, Arrest video at 3:39-3:49 minutes.)

---

[3] PCC 14A.20.060 makes the City's Indecent Exposure ordinance an arrestable offense: "Unless a different penalty is specifically provided, any violation of any provision of this Title shall upon conviction be punished by a fine of not more than $500, or by imprisonment of not more than 6 months, or by both.  However, no greater penalty shall be imposed than allowed under Oregon law."

Page  6  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

Officer Payton and Sgt. Engstrom stopped once they got plaintiff to the patrol car. They again asked plaintiff to stand up and get into the car. The officers explained to plaintiff there was a risk of getting hurt if they had to lift and carry him into the car. The officers also explained plaintiff's dog could travel with him to jail if he got in and got seated into the car. Plaintiff did not say anything and refused to cooperate. (Payton Decl., ¶ 13; Engstrom Decl., ¶ 12; *see also* Rees Decl., Ex. 1, Arrest video at 4:01-4:20 minutes.)

Officer Payton and Sgt. Engstrom, along with other officers lifted plaintiff and carried him head first into the back of the patrol car, with plaintiff's face facing up to the ceiling. Portland Police Officer Melissa Newhard went to the street side of the car and from there, gently guided plaintiff's shoulders into the back seat while other officers lifted and pushed plaintiff's legs and torso. As the officers were placing plaintiff into the patrol car, he remained limp, never said anything, and did not otherwise express pain or discomfort. Once in the back of the patrol car, the officers shut the door and never touched plaintiff again. (*See* Rees Decl., Ex. 1, Arrest video at 5:45-6:27 minutes.) Once inside the car, plaintiff then maneuvered his handcuffs from behind his body to the front of his body. (Payton Decl., ¶¶13, 17; Engstrom Decl., ¶¶ 12, 15; Declaration of Melissa Newhard ("Newhard Declaration"), ¶ 8, 9; *see also* Rees Decl., Ex. 1, Arrest video at 5:50-6:33 minutes.)

5.   The Police Drive Mglej to Jail

Officer Payton and Lt. Dobson drove plaintiff to the Multnomah County Detention Center ("MCDC"). The drive took about two minutes. During the trip to MCDC, plaintiff never said anything or otherwise acted as if he was in pain or discomfort. (Payton Decl., ¶ 14.)

At MCDC, deputies from the Multnomah County Sheriff's Office took custody and control of plaintiff. Officer Payton took a single photograph of plaintiff's feet, just as the jail deputies were placing plaintiff into an isolation cell. The photograph shows six small abrasions on plaintiff's toes and top of his feet. (Payton Decl., ¶ 16, Ex. 1, photograph.)

Page  7 – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
          OF LAW IN SUPPORT

Officer Newhard was directed to charge plaintiff with violating PCC 14A.40.030. Newhard charged plaintiff with that offense and no other offense. (Newhard Decl., ¶ 11, Ex. 1, Custody Report.) Newhard took control of plaintiff's property, including his small dog, and processed the dog and property in accordance with the Bureau's directives and standard operating procedures. (Newhard Decl., ¶ 12, Ex. 2, PPB Directive 0870.40; ¶ 13, Ex. 3, PPB Standard Operating procedure regarding impounded animals; ¶ 14, Ex. 4, PPB Impound Form; ¶ 15, Ex. 5, PPB Property/Evidence Receipt.)

Officer Payton & Sgt. Engstrom each documented their interactions with plaintiff in proper bureau report. (Payton Decl. ¶ 19, Ex. 2, PPB Case No. 14-041928 Investigation Report; Engstrom Decl. ¶ 17, Ex. 1, PPB Case No. 14-041928 Special Report.)

Sometime later, the Multnomah County District Attorney's Office dismissed the criminal charge against plaintiff.

B.    PLEADINGS

On April 15, 2015, plaintiff filed his Amended Complaint ("Complaint"). He brings several "causes of action" under 42 U.S.C. § 1983 seeking damages from all defendants for violation of his rights protected by the First, Fourth and Fourteenth Amendments. (*See* Complaint, ¶¶ 95-155.) First, plaintiff claims his arrest for his public nudity was unlawful because his "actions are constitutional [sic] protected," violating his rights protected by the Fourth Amendment. (Complaint, ¶¶100, 103.) Second, plaintiff also claims the manner of his arrest by defendants Payton, Engstrom and the other officers in carrying him to the patrol car and placing him inside the car, "exceeded the degree of force which reasonable and prudent law enforcement officer would have applied." (Complaint, ¶¶ 109-112, 115.) As such, plaintiff claims the manner of his arrest violated his rights protected under the Fourth Amendment. (Complaint, ¶¶ 95-105.) Third, plaintiff claims the charging decision for violating PCC 14A.40.030 was "initiated maliciously because there was no evidence to support Plaintiff's

Page 8 – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

detention." (Complaint, ¶ 124.) Plaintiff claims the criminal charge violated his federal rights protected by the Fourth and Fourteenth Amendment. (Complaint, ¶¶ 121-127.) Fourth, plaintiff claims his arrest for indecent exposure violated his First Amendment rights, and complains the City of Portland negligently "refuse[s] to modify or amend its Ordinance and continues to enforce it." (Complaint, ¶¶ 130-131.) Finally, in a claim that appears to be more directed to his detention at jail, plaintiff asserts a "Fourth Amendment violation" for "Cruel and Unusual Punishment." (Complaint, ¶¶ 135-147.)

Plaintiff also brings several causes of action under various provisions of the Oregon Constitution, again seeking damages from all defendants. (Complaint, ¶¶ 148-212.) Similar to his federal claims, plaintiff asserts claims for money damages under Article 1, Sections 8, 9, 13 and 16 for respectively, unlawful arrest, excessive force, malicious prosecution, and denial of free speech. (*Id.*) Plaintiff seeks money damages only for these alleged violations of the Oregon Constitution. (Complaint, ¶¶ 160, 162, 179, 180, 187, 210, 212.)

Finally, plaintiff brings three causes of action under state tort law against all defendants for battery, assault, and negligence. (Complaint, ¶¶ 213-232.)

Defendants Dobson, Payton, Engstrom, Newhard and the City of Portland ("City defendants") have denied plaintiff's claims. (*See* Docket 36, Defendants Craig Dobson, Sarah Payton, Officer Engstrom, Officer Newhard, and City of Portland's Answer and Affirmative Defenses to Amended Complaint ("City defendants' Answer"), pp. 1-14.) The City defendants assert various affirmative defenses including failure to state a claim, qualified immunity, probable cause, statutory authority to use control or force during an arrest under ORS 161.205(5) and 161.235, justification, good faith and the lack of a private right of action for damages under the Oregon Constitution. (*See* City defendants' Answer, pp. 14-16.)

/////

/////

Page  9  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
            OF LAW IN SUPPORT

C.    SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56 (a) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to summary judgment as a matter of law.  The moving party must show the absence of an issue of material fact.  *Leisek v. Brightwood Corp.,* 278 F.3d 895, 898 (9th Cir. 2002).  Once the initial burden is satisfied, the burden shifts to the opponent to show through the production of probative evidence that there remains a fact dispute to be tried. The nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Leisek, supra,* at 898.  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Villiarmo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002).  On a motion for summary judgment, the court "must view the evidence …in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party."  *Nicholson v. Hyannis Air. Serv., Inc.*, 580 F.3d 1116, 1122 n. 1 (9th Cir. 2009) (internal quotation omitted.)  However, it is not the task of the district court "to scour the record in search of a genuine issue of triable fact."  *Jimmie's Limousine Service, Inc. v. City of Oakland*, 2005 WL 2000947 (N.D. Cal.) (quoting *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).)  The substantive law governing a claim or defense determines whether a fact is material.  *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir. 2000).

D.    ARGUMENT

1.    Unlawful Arrest/Violation of the First Amendment

Plaintiff's First and Fourth claims for relief are intertwined with the same legal question: whether the City's police officers could lawfully arrest plaintiff for violating the City's Indecent Exposure Ordinance, PCC 14A.40.030.  Plaintiff claims his nude demonstration in front of the federal courthouse was constitutionally protected, and as a result, his arrest under the ordinance was unlawful.  (*See* Complaint, ¶¶ 100, 103, 131.)  Plaintiff contends the City's enforcement of its ordinance where "nudity is used as a demonstration" violates the First Amendment.  (*See*

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

Complaint, ¶¶ 130-132.)  Whether plaintiff makes a facial challenge to the City's ordinance, or whether he makes an "as-applied" challenge to the ordinance, plaintiff is wrong.

### a.    First Amendment-Expressive Conduct

The First Amendment protects not simply the written or spoken word from government interference, but also certain forms of expressive conduct.  *Texas v. Johnson*, 491 U.S. 397, 404 (1989).  Significantly though, a person's mere subjective intent to express an idea through conduct, does not necessarily merit First Amendment protection.  *See United States v. O'Brien,* 391 U.S. 367, 376 (1968) ("We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."); *see also Dallas v. Stanglin*, 409 U.S 19, 25 (1989) ("It is possible to find some kernel of expression in almost every activity a person undertakes … but such a kernel is not sufficient to bring the activity within the protection of the First Amendment.")

Rather, whether certain conduct might possibly receive First Amendment protection, depends on two factors:

> Whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it."

*Texas v. Johnson*, 491 U.S. at 404 (quoting *United States v. O'Brien*, 391 U.S. at 410-411 (1968).)

In *Texas v. Johnson*, Mr. Johnson publicly burned an American flag as the culmination of a political demonstration that coincided with the convening of the Republican Party and the re-nomination of Ronald Reagan for President.  *Id.* at 406.  Johnson appealed his conviction for flag desecration under Texas law, arguing the First Amendment protected his expressive conduct.  *Id.* at 400-02.  The Supreme Court agreed, and in affirming the reversal of his conviction by the Texas Court of Criminal Appeals, noted the "expressive, overtly political nature of [Johnson's] conduct was … overwhelmingly apparent."  *Id.* at 406.

/////

Page  11  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
OF LAW IN SUPPORT

However, even assuming conduct is sufficiently particularized to create a great likelihood that it will be understood by those viewing it, - in other words "sufficiently imbued with elements of communication" to implicate the First Amendment (*see Texas v. Johnson*, 491 U.S. at 406), - the government may still proscribe that conduct.

> [W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.
>
> ****
>
> [W]e think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*O'Brien*, *supra*, 391 U.S. at 376-77.

In *O'Brien*, Mr. O'Brien burned his Selective Service Certificate in violation of federal law on the steps of a courthouse in Boston.  *O'Brien*, 391 U.S. at 369.  He did this "in demonstration against the [Vietnam] war and against the draft."  *Id*. at 376.  On appeal of his criminal conviction, O'Brien argued the federal law prohibiting the knowing destruction of the certificate violated his First Amendment rights.  The Court rejected that argument in adopting the eponymous four-part *O'Brien* test:  Legitimate governmental regulations that advance important interests are constitutional, if they are unrelated to the suppression of speech and only incidentally restrict First Amendment freedoms.  *Id*. at 377.

In this regard, regulating public nudity has long been within the constitutional power of government.  In *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991), the Supreme Court noted

> "[W]e find Indiana's public indecency statute is justified despite its incidental limitations on some expressive activity.  The public indecency statute is clearly within the constitutional power of the State and furthers substantial governmental interests. … [T]he

Page  12  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
        OF LAW IN SUPPORT

> statute's purpose of protecting societal order and morality is clear
> from its text and history.  Public indecency statutes of his sort are
> of ancient origin and presently exist in at least 47 States.  Public
> indecency, including nudity, was a criminal offense at common
> law, and this Court recognized the common-law roots of the
> offense of "gross and open indecency" in *Winters v. New York*, 333
> U.S. 507, 515, 68 S.Ct. 665, 670, 92 L.Ed. 840 (1948).  Public
> nudity was considered an act *malum in se*.  *Le Roy v. Sidley*, 1 Sid.
> 168, 82 Eng. Rep. 1036 (K.B. 1664).  Public indecency statutes
> such as the one before us reflect moral disapproval of people
> appearing in the nude among strangers in public places.

*Barnes v. Glen Theatre, Inc.*, 501 U.S. at 567-68 (1991).

In *Barnes*, owners and dancers of a nude dancing club sued to enjoin enforcement of an Indiana public indecency statute that, in part, criminalized appearing in public in a state of nudity.  *Barnes*, 501 U.S. at 569, n. 2.  The owners and dancers claimed the statute's requirement for the dancers to appear partially clothed while performing violated the First Amendment's guarantee of freedom of expression.  *Id*. at 562-63.  The Court explicitly rejected the notion that a person's subjective intent to convey some message by appearing nude in public was a form of constitutionally protected conduct.  *Id*. at 570.  Rather, the Court affirmed that a statute's clear focus on prohibiting public nudity was a governmental interest unrelated to the suppression of free expression, "whether or not [the nudity] is [also] combined with expressive activity."  *Id*. at 571.

The *Barnes* holding that public nudity laws are to be evaluated under the *O'Brien* test was explicitly reaffirmed in *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000).  In *City of Erie*, the Court even made the obvious point that "[b]eing 'in a state of nudity' is not an inherently expressive condition" subject to First Amendment protection.  *Id*.  And while *Barnes* and *City of Erie* involved nude entertainment inside private businesses, lower courts in the Ninth Circuit have applied the *O'Brien* tests to public displays of nudity as a form of protest.  *See Hightower v. City and County of San Francisco*, 2013 WL 36115, *7 (N.D. Cal.) (facial challenge to ordinance) ("[P]ublic nudity in and of itself is not commonly associated with

Page  13  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

expression of a particular message.")  *Bush v. City of San Diego*, 2010 WL 2465034 *1 (S.D. Cal.).  "[N]udity, by itself, [does not] communicate an intelligible message such that there [is no] First Amendment right to be naked."

i.    <u>Facial Challenge</u>

"A facial challenge to a legislative [a]ct is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [a]ct would be valid."  *U.S. v. Salerno*, 481 U.S. 793, 745 (1987); *see also S.D. Myers, Inc., City and County of San Francisco*, 253 F.3d 461, 467-68 (2001) (same).  When making such a challenge under the First Amendment, "[a] facial challenge must fail unless, at a minimum, the challenged ordinance is directed narrowly and specifically at expression or conduct commonly associated with expression."  *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 950 (9th Cir. 1997).

In the present case, it is unclear if plaintiff is making a facial challenge.  However, he does complain that the City has "[n]egligently refused to modify or amend its Ordinance and continues to enforce it" when "nudity is used as a demonstration." (Complaint, ¶ 130.)

Regardless, the ordinance is content-neutral, directed to a legitimate governmental interest, and is fundamentally no different than the section of the Indiana indecency statute upheld in *Barnes,* or for that matter, the San Francisco and San Diego ordinances upheld in *Hightower* and *Bush*, respectively, *supra.*  In addition, the Oregon Court of Appeals has upheld the facially validity of the ordinance in *City of Portland v. Gatewood*, 76 Or. App. 74, 78 (1985).[4]

Plaintiff can make no successful facial challenge to PCC 14A.40.030.

/////

---

[4] The ordinance in *Gatewood* was numbered PCC 14.24.060, but the text is identical to PCC 14.40.030.

Page  14  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
              OF LAW IN SUPPORT

ii.    As-applied Challenge

Similarly, plaintiff can make no successful as-applied challenge.  Plaintiff's nude demonstration fails to rise to a level of protected expression under the First Amendment.

First of all, with respect to plaintiff's symbolic strawman, the posters, his violin playing, and nudity, plaintiff's message was not sufficiently particularized such that there was a great likelihood it would be understood by persons passing by.  *See Texas v. Johnson*, 491 U.S. at 404. Recall, plaintiff concedes the message associated with undressing and arranging the clothing was "a multi-themed message." (Manlove Decl., Ex. 1, Mglej Depo, 24:14-19.)  His intent was that the clothing arrangement on the sidewalk "was representing the architects of humanity."  (*Id.*) Plaintiff explains the suit and tie on the sidewalk was connected to "the frivolous arrogance of forgetting our own humanity," represented humanity's drive for "animalistic needs for sex, power" and illustrated the separation of humanity from "families," "dreams," "require[d] vacations" and those "something[s]" "that we all seek… in life."  (Manlove Decl., Ex. 1, Mglej Depo, 24:19 - 25:6.)

Not surprising, during his demonstration people walked by and asked plaintiff what he was doing.  (Manlove Decl., Ex. 1, Mglej Depo, 27:22-23.)  One person asked "[i]s this an anti-war thing?  Is this for war?"  (Manlove Decl., Ex. 1, Mglej Depo, 27:25 – 28:3.)  A woman asked: "What are you protesting?"  Plaintiff did not appear to respond.  (Rees Decl., Ex. 1, Initial Contact video at 8:41 minutes.)  At one point a man asked: "What's your reason for doing this?" Plaintiff responded "Freedom."  (*Id.* at 20:18 minutes.)

The police who responded to the complaints of plaintiff's nudity were also unclear about the point of plaintiff's demonstration.  (Payton Decl., ¶ 7.)  When one officer stated and asked plaintiff: "This is a protest?"  "What are you protesting?" plaintiff replied: "Decide for yourself." (Rees Decl., Ex. 1, Initial Contact video at 6:19-6:25 minutes.)  Later, when Lt. Dobson asked what he was protesting, plaintiff refused to elaborate, stating, in effect, he did not have to explain

Page  15  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
            OF LAW IN SUPPORT

the point of his conduct, or how his nudity was somehow connected to his protest.  (*See* Dobson Decl., ¶¶ 10, 17.)

At his deposition, plaintiff conceded he has no facts showing or suggesting his "multi-themed message" was received or understood by the public.  (Manlove Decl., Ex. 1, Mglej Depo, 45:7 - 47:9.)  Plaintiff made the same concession with respect to the posters.  (Manlove Decl., Ex. 1, Mglej Depo, 51:5-16.)  Moreover, at deposition, plaintiff conceded the "symbolic metaphor of transparency" that he meant his nudity to convey to the public, could have in fact been interpreted in many other ways.

> Q.    Was the nudity meant to be – to convey a particular message?
>
> A.    Yes.
>
> Q.    And—and what was that?  Please explain.
>
> A.    The nudity was designed to be a symbolic metaphor of transparency.
>
> Q.    Anything else about the – the nudity?
>
> A.    That's ambiguous and confusing.
>
> Q.    Well, was there—was there any other message that you were trying to convey by being completely nude, other than have your nudity be a symbolic metaphor of transparency?
>
> A.    I'd say it could be interpreted in many ways, but that was one of the core messages.
>
> Q.    What other ways do you think it could have been interpreted?
>
> A.    By whichever way the consumer or viewer chose to interpret it.
>
> Q.    Would one possibility be that the viewer attached no significance at all to your nudity, no communicative significance?
>
> A.    I don't know.  There's thousands of incident possibilities.
>
> Q.    Is one possibility that a viewer could have thought, "Maybe this person has some sort of mental problem." ?
>
> A.    I don't know.  Objection, that's speculation.

Page  16  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
         OF LAW IN SUPPORT

Q.    Okay.  But you –Again though, many possible interpretations, correct?

A.    There could be an interpretation that I was a divine angel and I was the rebirth of Christ.  But I'm sure that somebody who thought that would be mentally ill.  So yes, there are possibilities where somebody could see this as a person who was advocating their rights and defining the corporate structure and escaping this rabbit trap.

And there's another possibility that I was just some crazy person.  And then there's a possibility that maybe I was doing something right.  <u>I mean, I can go on, but there's so many possibilities.</u>  So that's kind of why questions like that are objected to and not really allowed in a court of law.  Because they can just go on and on and on.

(Manlove Decl., Ex. 1, Mglej Depo, 52:8 - 54:2.) (Emphasis added.)

In short, plaintiff's demonstration was an amalgam of incoherent messages and offensive conduct.  No reasonable person would understand any connection between the political quotations from Mahmoud Ahmadinejad, and the public exposure of plaintiff's genitalia.  Plaintiff's nudity advanced no message.  At best, plaintiff's nudity was simply base amplification of his "multi-themed message" that no one understood.  Such amplification is not constitutionally protected.  See *Bush v. City of San Diego*, 2010 WL 2465034 *1.  As such, plaintiff's "demonstration", and in particular his nudity, fails as expressive conduct under *Texas v. Johnson, supra*.

Moreover, even assuming plaintiff's nude demonstration could reasonably have been perceived as some form of protected expressive conduct, plaintiff's First Amendment challenge to his arrest cannot withstand the four-part test from *O'Brien, supra*.  Portland City Code 14A.40.030 is squarely within the police power of the City, was adopted by City Council to "prevent and prohibit conduct that unjustifiably inflicts or threatens harm to individual or public interests," [5] is not directed at the suppression of speech, and has the barest of impacts on

---

[5] PCC 14A.20.010 General Purposes of Title, states:
"The general purposes of the provisions set forth in Title 14 are to prevent and prohibit conduct

Page  17  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

protected expression.  On May 23, 2014, Lt. Dobson enforced the ordinance just as City Council envisioned.

The Court should grant City defendants' motion for summary judgment on plaintiff's First Amendment claim.  Fed. R. Civ. P. 56(a).

### b.    Fourth Amendment – Unlawful Arrest

A warrantless arrest is reasonable under the Fourth Amendment when there is probable cause to believe that a criminal offense has been or is being committed, and the person to be arrested has committed the offense.  *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003). "Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed." *Lassister v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009).  Probable cause "deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle, supra*.  It is a "'practical, nontechnical conception'" that deals with "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Id.* at 370 (quoting *Illinois v. Gates*, 462 U.S. 213,231 (1983)).  At its core, probable cause is a "reasonable ground for belief of guilt" and the belief is particularized to the person to be arrested.  *Id.*   The standard is whether "a prudent person would have concluded there was a fair probability that the [criminal] defendant had committed a crime." *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008).  Moreover, a police officer's reasonable mistake concerning the validity or applicability of a law in a certain factual setting does not affect probable cause.  *See Heien v. North Carolina*, __U.S. __, 135 S.Ct 530, 534 (2014) (holding reasonable mistake concerning interpretation of state motor vehicle statute did not affect reasonable suspicion to uphold stop

that unjustifiably inflicts or threatens harm to individual or public interests, to safeguard conduct that is without culpability from condemnation as criminal, and to provide fair warning of the nature of the conduct declared to constitute an offense."

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

under Fourth Amendment.)  "[R]easonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition." *Id*. at 535.  Finally, probable cause is determined by "the collective knowledge of all the officers involved in the criminal investigation."  *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008).

Under Oregon law, probable cause requires an arresting officer to subjectively believe more likely than not that an offense has been committed, and this belief must be objectively reasonable under the totality of the circumstances.  *State v. Pollock*, 337 Or. 618, 622-23 (2004). Like federal law, probable cause in Oregon is determined by the collective knowledge of all the involved officers.  *State v. Soldahl*, 331 Or. 420, 426-28 (2000).

In the present case, Lt. Dobson directed officers to arrest and charge plaintiff for violating PCC 14A.40.030, Portland's Indecent Exposure ordinance.  (Dobson Decl., ¶ 12.)  Plaintiff admits he was "fully nude" in front of the federal courthouse.  (Manlove Decl., Ex. 1, Mglej Depo, 20:10 - 21:7.)

Plaintiff cannot challenge the lawfulness of his arrest under the First Amendment for the reasons discussed *supra* at pp. 10-18.

Plaintiff also cannot challenge the lawfulness of his arrest under Article 1, section 8 of the Oregon Constitution.  Recall, PCC 14A.40.030 has been held facially valid.  *City of Portland v. Gatewood*, 76 Or. App. 74, 78 (1985).  For purposes of the Oregon Constitution, PCC 14A.40.030 is a law that focuses of forbidden effects, (*i.e.*, public nudity), without any reference to expression, although in some circumstances, a person might argue the ordinance could not be constitutionally applied to the person's particular conduct (e.g., nudity as a communicative act). *See State v. Plowman*, 314 Or. 157, 163-64 (1992) (En Banc) (discussing framework for evaluating whether a law violates Article I, section 8.).  Certainly though, a person's subjective belief does not transform punishable conduct into protected expression.  *See Huffman and Wright Logging Co. v. Wade,* 317 Or. 445 451-52 (1993) (En Banc) (logging protestors' acts of trespass

Page  19  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

not protected expression under Article I, section 8, noting that "a person's *reason for engaging in punishable conduct* does not transform conduct into expression", and "*speech accompanying punishable conduct* does not transform conduct into expression under Article I, section 8.") (Emphasis original.)

But in the present case, the issue is not whether plaintiff's arrest violated Article I, section 8, but rather if Lt. Dobson had probable cause to believe plaintiff's conduct violated PCC 14A.40.030.  Recall, this issue of probable cause is not the realm of "legal technicians" but rather "reasonable and prudent men."  *Maryland v. Pringle*, 540 U.S at 370.  The undisputed facts show that on May 23, 2014, plaintiff's nudity had no communicative value- at least to a reasonable and prudent person.  The police were unclear why plaintiff exposed his genitalia to the public. (Payton Decl., ¶ 7.)  (Dobson Decl., ¶¶ 10, 18.)  Plaintiff refused to tell the police what or why he was protesting.  (*Id.*)  Plaintiff was engaged in a "silent protest," and by conceding his nudity was capable of countless interpretation, effectively admits his nudity had no communicative value.  (*See* Manlove Decl., Ex. 1, Mglej Depo, 68:4-8, 52:8-54:2.)

Without any doubt, plaintiff more likely than not violated the City's ordinance.  (*See* Rees Decl., Ex. 1, Initial Contact video.)  As a result, Dobson and the other police officers had probable cause to arrest plaintiff, and there is no Fourth Amendment violation.

The Court should grant City defendants' motion for summary judgment on plaintiff's unlawful arrest claim.  Fed. R. Civ. P. 56(a).

2.    Fourth Amendment – Excessive Force

The Fourth Amendment allows police officers to use reasonable force in carrying out law enforcement duties.  *See Graham v. Connor,* 490 U.S. 386, 396 (1989) ("the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it") (citing *Terry v. Ohio,* 392 U.S. 1, 22–27 (1968)).  A claim for excessive force under the Fourth Amendment involves "whether the officers' actions [were]

Page 20 – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

'objectively reasonable' in light of the facts and circumstances confronting them." *Graham,* 490 U.S. at 397; *see also Glenn v. Wash. Co.,* 673 F.3d 864, 871 (9th Cir. 2011). Significantly, police officers are not "required to use the least intrusive degree of force possible" as long as reasonable force was used. *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1993). Finally, the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396.

Fundamentally, reasonableness involves balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). In the Ninth Circuit, an excessive force claim is analyzed in three steps. *Glenn*, 673 F.3d at 871. First, the Court evaluates the gravity of the intrusion with reference to "the type and amount of force inflicted." *Id.* Second, the Court identifies the government's interests that were furthered by the use of force. *Id.* In the final step, the Court balances the individual's interests against the interest of the government, acting through the community's police officers. *Id.*

In the present case, the intrusion was minimal. Officer Payton and Sgt. Engstrom calmly approached plaintiff, told him he was under arrest, and handcuffed him by double locking and checking the handcuffs for appropriate tightness. (Payton Decl., ¶ 11; Engstrom Decl., ¶ 10.) Handcuffing was appropriate because Payton was transporting plaintiff to jail in her patrol car. (Dobson Decl., ¶ 14.) Payton and Engstrom then asked plaintiff several times to stand and walk to the patrol car. When plaintiff refused, they then lifted him by placing an arm under each of plaintiff's arms. They got plaintiff to his knees, and again asked him to stand and walk to the car. Only with his continuous refusal, Payton and Engstrom then carried and dragged him the 20 to 25 to the patrol car. Plaintiff remained limp during the carry, did not say anything, or grimace or otherwise act as if he was in pain or discomfort. (Payton Decl., ¶ 12; Engstrom Decl., ¶ 11.)

/////

Page 21 – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

The officers repeated their entreaties for cooperation at the patrol car.  Sgt. Engstrom specifically advised plaintiff it would be easier and safer to simply stand up and get in the car. (Engstrom Decl., ¶ 12.)  However, plaintiff remained silent and refused to cooperate.  Payton and Engstrom then lifted plaintiff's legs and torso and placed him into the backseat of the patrol car head first, with his face towards the ceiling. (Payton Decl., ¶ 13; Engstrom Decl., ¶ 12.)  Officer Newhard assisted by guiding plaintiff's shoulders from the street side of the car.  (Newhard Decl., ¶ 8.)  Sgt. Dobson is not certain he ever touched plaintiff, but he supervised plaintiff's arrest.  (Dobson Decl., ¶ 16.)

Other than handcuffing plaintiff as a form of control, the officers used no force on plaintiff.  (*See* Dobson Decl., ¶ 16.)  Handcuffing is constitutionally permissible even if the underlying offense is minor. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354-55 (2001) (handcuffing, placement in police car, and taken to jail "not so extraordinary to violate the Fourth Amendment.").  *See also Karboau v. Lawrence*, 2007 WL 114022 (D.Or.) (handcuffing alone is not unreasonable).  Payton and Engstrom's lifting and carrying of plaintiff was the minimal amount of physical contact necessary to overcome plaintiff's passive resistance.  (*Id.*) Even "purely passive resistance can support the use of some force." *Bryan v. MacPherson*, 630 F.3d 805, 830 (9th Cir. 2010).  Also, neither officer used any sort of pain compliance technique when they lifted and carried plaintiff.  (Payton Decl., ¶ 13; Engstrom Decl., ¶ 12.)  Notably, pain compliance techniques - which are a more intrusive level of force - have been held a reasonable use of force in other arrests of persons engaged in passive resistance.  *Forrester v. City of San Diego*, 25 F.3d at 807.  Again, like the lift and carry to the curb, plaintiff remained limp, did not say anything, or grimace or otherwise act as if he was in pain or discomfort while being placed into the patrol car.  (Payton Decl., ¶ 13; Engstrom Decl., ¶ 12; s*ee* Rees Decl., Ex. 1, Arrest Video at 5:45-6:27 minutes.)

/////

Page  22  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
            OF LAW IN SUPPORT

The video taken from Officer Payton's patrol car removes any disputed fact about the intrusiveness of plaintiff's arrest.  (*See* Rees Decl., Ex. 1, Arrest video.)  *See also Scott v. Harris,* 550 U.S. 372, 378, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Forrester v. City of San Diego, supra*, 25 F.3d at 807 (noting that video of the arrests of the protestors showed "exactly what happened [and] removed much argument and interpretation of the facts themselves.")  Plaintiff concedes the video accurately depicts what happened during his arrest.  (Manlove Decl., Ex. 1, Mglej Depo, 101:9 - 102:15.)  Moreover, plaintiff admits it is not the officers' force he finds objectionable, but rather the officers' mere physical touching, due to what he – wrongly – believes to be an unlawful arrest.  (Manlove Decl., Ex. 1, Mglej Depo, 110:16 - 111:8.)  Payton's video and plaintiff's admission establish any intrusion was minimal.

With respect to the government's interest in plaintiff's arrest, Acting Lt. Dobson and the other City defendants were simply enforcing the City's ordinance.  Only after repeated complaints about his nudity, explanations, warnings, and the complete absence of any reasonable understanding of any communicative element to his nudity, did Dobson decide to arrest plaintiff. (Dobson Decl., ¶ 18.)  Local government has a significant interest in upholding its laws that protect the public health, safety and welfare.  *See Barnes, supra*, 501 U.S. at 569 ("The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals[.]; *see also City of Portland v. Gatewood*, *supra*, 76 Or. App. at 79.  ("The authority of a city to enact reasonable legislation to regulate conduct which is thought to be detrimental to the public's health, safety, or morals is indisputable.")  The minimal use of force by Payton and Engstrom appropriately furthered this interest.

Balancing the minimal amount of physical contact and control the City defendants used in arresting plaintiff, against the City's legitimate exercise of its police power, shows the City

Page  23  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
                OF LAW IN SUPPORT

defendants' use of force was objectively reasonable under the totality of the circumstances.

The Court should grant City defendants' motion for summary judgment on plaintiff's excessive force claim.  Fed. R. Civ. P. 56(a).

### 3.    Malicious Prosecution as a Federal Claim

A federal claim for malicious prosecution is generally not available if there is an adequate remedy at state law (*e.g.*, the existence of a state tort for malicious prosecution).  *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985).  Section 1983 allows a claim for malicious prosecution when "a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights."  *Bretz*, 773 F.2d at 1031; *see also Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (incorporating elements of state common law tort of malicious prosecution in analysis under Section 1983.); *Westwood v. City of Hermiston*, 787 F. Supp. 2d 1174, 1205 (D. Or. 2011).  In short, to establish a malicious prosecution claim under Section 1983, a plaintiff must establish: "(1) the elements of the state tort; and (2) an intent to deprive the plaintiff of a constitutional right."  *Evans v. Multnomah Cnty.*, 2009 WL 1011580, at *11 (D. Or.).

In Oregon, the elements of a malicious prosecution claim are "(1) the institution or continuation of the original criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceeding; and (6) injury or damage because of the prosecution."  *Blandino v. Fischel*, 179 Or. App. 185, 190-91 (2002).

However, in the present case, plaintiff cannot meet two fundamental elements of the tort: malice and lack of probable cause.  Malice is defined as "any primary purpose other than bringing a person to justice."  *Ledford v. Gutoski*, 319 Or. 397, 404 (1994).  Defendant Dobson has explained that he decided to arrest plaintiff only because of the repeated complaints of his

Page  24  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
        OF LAW IN SUPPORT

public nudity.  (Dobson Decl., ¶ 18.)  "'[P]robable cause' refers to the subjective and objectively reasonable belief that the defendant has committed a crime." *Blandino v. Fishel*, 179 Or. App. at 191.  In Oregon, "[p]robable cause' means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it."  ORS 131.005(11).  Defendant Dobson has explained he believed he had probable cause to arrest plaintiff for violating PCC 14A.40.030.  (Dobson Decl., ¶¶ 8-9.)  He confirmed that belief with his attorney.  (Dobson Decl., ¶ 9.)  The video from Officer Payton's patrol car shows Dobson's belief was objectively reasonable.  (Rees Decl., Ex. 1, Initial Contact video.)

Finally, plaintiff cannot show Dobson's arrest and charging decision was done to deprive plaintiff of any federally protected rights, including any right plaintiff had under the First Amendment.  (Dobson Decl., ¶¶12, 18.)  (*See* pp. 10-23, *supra*.)

As a result, plaintiff cannot make out any federal claim for malicious prosecution. *Awabdy*, 368 F.3d at 1066.

The Court should grant City defendants' motion for summary judgment on plaintiff's malicious prosecution claim.  Fed. R. Civ. P. 56(a).

### 4.    Fourth Amendment – "Cruel and Unusual Punishment"

Plaintiff's Fifth Cause of Action ostensibly asserts a claim under the Fourth Amendment for "Cruel and Unusual Punishment."  (Complaint, p. 18 "Fifth Cause of Action")  However, the factual allegations of this claim appear to be directed at plaintiff's treatment at MCDC.  (*See* Complaint, ¶¶ 137-145.)

In any event, plaintiff has no claim for "cruel and unusual punishment."  *Ingraham v. Wright*, 430 U.S. 651, 667-68 (1977) (Eight Amendment's "Cruel and Unusual Punishment Clause" applies to those convicted of a crime.)  Also, his treatment as a pre-trial detainee is evaluated under the Fourteenth Amendment, using an objective reasonableness standard. *Kingsley v. Hendrickson*, __ U.S. __, 135 S.Ct. 2466, 2473-74 (2015).

Page  25  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
          OF LAW IN SUPPORT

The Court should grant City defendants' motion for summary judgment on plaintiff's "cruel and unusual punishment" claim.  Fed. R. Civ. P. 56(a).

5.    Qualified Immunity

In the context of 42 U.S.C. § 1983 claims, "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Stanton v. Sims*, __U.S. __, 134 S.Ct. 3, 4-5 (2013) (*per curiam*) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law."  *Ashcroft v. al-Kidd*, __ U.S. __, 131 S.Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).)  Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  The linchpin of qualified immunity is the reasonableness of the official's conduct evaluated in the particularized circumstances with which the official is confronted.  *See Anderson v. Creighton*, 483 U.S. 635, 638-40 (1987).  Accordingly, a police officer will be denied qualified immunity in a Section 1983 action "only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood her conduct to be unlawful in that situation."  *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).  Finally, police officers are allowed to rely on the advice of their attorneys.  *Ewing v. City of Stockton*, 588 F.3d 1218, 1231 (9th Cir. 2009).  While reliance on an attorney's advice does not automatically insulate an officer from liability, "it goes far to establish qualified immunity."  *Id.*, quoting *Arnsberg v. United States*, 757 F.2d 971, 981 (9th Cir. 1985*); see also Beasley v. City of*

Page  26 – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

*Keizer*, 525 Fed. Appx. 549, 552 (2013) (same).

**a.    First Amendment-Expressive Conduct/Fourth Amendment-Unlawful Arrest**

In the present case, there is no clearly established law allowing an absolute right to use nudity as protected expressive conduct, whether for a "protest" or some other purpose. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000). And just like an adult bookstore that has become the site for prostitution and other public order offenses cannot invoke the protection of the First Amendment "by merely linking the words 'sex' and 'books'" (*see Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 705 (1986)), plaintiff cannot invoke the protection of the First Amendment by publicly exposing his genitalia, and then simply stating "I'm protesting." The law requires more: a particularized message that is highly likely to be understood by the viewer. *Texas v. Johnson*, 491 U.S. at 404. And even then, the law allows governmental regulation of that protected expression if the regulation furthers an important government interest and only incidentally impacts the expression. *O'Brien,* 391 U.S. at 376-77. This is not surprising given that "the First Amendment does not guarantee the right to [engage in protected expression] at all times and places and in any manner that may be desired." *Heffron v. International Soc'y for Krishna Consciousness, Inc.,* 452 U.S. 640, 647 (1981).

On May 23, 2014, there appeared no rational connection between plaintiff's brazen nudity and his protest. (*See* Payton Decl., ¶ 7.) Recall, plaintiff refused to explain the purpose of his protest. (Dobson Decl., ¶¶ 10, 17.) Dobson's decision to arrest and charge plaintiff for violating PCC 14A.40.030 was based on an appropriate and reasonable evaluation of the relevant factual and legal considerations. (Dobson Decl., ¶ 18.) Moreover, Sgt. Dobson relied on the advice of his attorney, who agreed probable cause existed to arrest plaintiff. (Dobson Decl., ¶¶ 9, 18.)

As a result, defendants Dobson, Payton, Engstrom and Newhard are entitled to qualified immunity for any claim alleging a First Amendment violation, or any claim alleging an unlawful

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

arrest under the Fourth Amendment.

### b.      Fourth Amendment- Use of Force

Similarly, the individual City defendants are entitled to qualified immunity for any Fourth Amendment excessive force.  Significantly, the law does not require police officers use the least degree of force possible in making an arrest.  *Forrester*, *supra*, 25 F.3d. at 807.  Rather, the inquiry is "whether the force that was used to effect a particular seizure was reasonable, viewing the facts from the perspective of a reasonable officer on the scene.  *Id*. at 807-808.

In the present case, Officer Payton and Sgt. Engstrom handcuffed plaintiff, and then lifted and carried him to and into the police car.  (Payton Decl., ¶¶ 11-13; Engstrom, ¶¶ 10-12.)[6] Officer Newhard minimally assisted by guiding plaintiff's shoulders into the back seat of the car. (Newhard Decl., ¶ 8.)  After failed entreaties and warnings, the officers' lifting, carrying and guiding plaintiff's limp body, was the minimal amount of physical contact necessary to overcome his passive resistance to his arrest.  (*See* Dobson Decl., ¶ 16.)  Also, plaintiff never complained of injury or acted in discomfort or distress at any time during his arrest or transport to jail.  (Payton Decl., ¶¶ 12-14; Engstrom Decl., ¶¶ 11-12.)

As a result, nothing occurred during plaintiff's arrest that would have given a reasonable police officer "fair notice" that the individual City defendants were violating plaintiff's Fourth Amendment rights to be free from excessive force.  *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (qualified immunity ensures police officers are subject to fair notice their conduct is unlawful before being subject to a civil suit for damages.)

Defendants Dobson, Payton, Engstrom and Newhard are entitled to qualified immunity for any claim alleging excessive force in violation of the Fourth Amendment.

---

[6] Notably, Payton and Engstrom employed the very control techniques the protesters in *Forrester* argued the police <u>should</u> <u>have</u> applied as a reasonable means of making the mass arrests in that case.  *See Forrester, supra* at 807.

Page  28 – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
           OF LAW IN SUPPORT

c.    **Malicious Prosecution as a Federal Claim**

As explained above at pp. 10-18, plaintiff had no clearly established right to publicly display his genitalia, and then immunize his conduct from criminal liability by simply stating "I'm protesting" and thereby seek the protection of the First Amendment.  PCC 14A.40.030 has been held facially valid.  *Gatewood*, *supra,* 76 Or. App. at 79.  Officer Newhard charged plaintiff with violating only that code provision.  (Newhard Decl., ¶ 11.)  A reasonable police officer would not know that charging plaintiff for violating PCC 14A.40.030 deprived plaintiff of any federally protected right.  *See Hope v. Pelzer, supra.*

Defendants Dobson, Payton, Engstrom and Newhard are entitled to qualified immunity for any claim alleging any federal claim for malicious prosecution.

The Court should grant City defendants motion for summary judgment for qualified immunity.  Fed. R. Civ. P. 56(a).

6.    <u>Oregon Constitution - No Private Right of Action for Money Damages</u>

Plaintiff has made clear he seeks money damages only for the alleged violations of the Oregon Constitution.  (*See* Complaint, ¶¶ 160, 162, 179, 180, 187, 210, 212.)  However, plaintiff has no private right of action for damages under the Oregon Constitution.  *Hunter v. City of Eugene*, 309 Or. 298, 304 (1990); *Standish v. Woods*, 2004 WL 1379466*2 (D. Or.)

The Court should grant City defendants' motion for summary judgment on plaintiff's claims for violations of the Oregon Constitution.  Fed. R. Civ. P. 56(a).

7.    <u>State Law - Battery</u>

Under Oregon law, a civil battery is a voluntary act that causes intentionally harmful or offensive contact with another.  *Cook v. Kinzua Pine Mills Co.,* 207 Or. 34, 48-49 (1956).  It is not necessary that the offensive, unpermitted touching cause actual physical harm; "it is sufficient if the contact is offensive or insulting."  *Bakker v. Baza'r, Inc.,* 275 Or. 245, 249 (1976).  However, police officers in Oregon are authorized by statute to use reasonable force in

Page  29  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
             OF LAW IN SUPPORT

making an arrest.  ORS 161.205(5); ORS 161.235(2).  Moreover, police officers in Oregon have a common law privilege, justification, to use the degree of force or control reasonably necessary to carry out their law enforcement activities.  *Gigler v. City of Klamath Falls*, 21 Or. App. 753, 763 (1975).  Such justified force is not a battery.  *Ballard v. City of Albany*, 221 Or. App. 630, 640-41 (2008).  Finally, police officers are presumed to be acting in good faith in determining the amount of force necessary to make an arrest.  *Rich v. Cooper*, 234 Or. 300, 311 (1963).

In the present case, Sgt. Dobson and the other police officers had probable cause to arrest plaintiff for violating PCC 14A.40.030.  *See* discussion, *supra* at pp. 18-20.  The City's officers exercised only the degree of control necessary to overcome plaintiff's passive resistance.  (Payton Decl., ¶¶ 11-13, 17-18.)  (Engstrom Decl., ¶¶ 10-12, 15-16.)  (Dobson Decl., ¶¶ 14-15.)  The video from Officer Payton's patrol car shows there was no battery.  (*See* Rees Decl., Ex. 1, Arrest video.)

The Court should grant City defendants' motion for summary judgment on plaintiff's battery claim.  Fed. R. Civ. P. 56(a).

### 8.    Assault

Common law civil assault is defined as "an intentional attempt to do violence to the person of another coupled with present ability to carry the intention into effect."  *Cook v. Kinuza Pine Mills Co. et al.*, 207 Or. at 47-48.  Mere words alone are not sufficient to constitute an assault, however.  *Bollaert v. Witter,* 101 Or. App. 654, 658 (1990).  Assault is the beginning of an act, which if consummated, constitutes battery.  Put another way, assault is an attempted battery.

In the present case, for the reasons discussed above, there was no battery.  Therefore, there was no assault.

The Court should grant City defendants' motion for summary judgment on plaintiff's assault claim.  Fed. R. Civ. P. 56(a).

Page  30  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

9.    <u>Negligence</u>

Plaintiff's specifications comprising his negligence claim against City defendants allege the defendants failed to exercise reasonable care while he was in their custody and control, placed the handcuffs on "to [sic] tight and dropped [him] on his handcuffs," and failed to train on the proper handling of service animals.  (*See* Complaint, ¶¶ 227, 228, 230.)

Plaintiff's specifications are without merit.  The defendants have explained the reasonableness of their actions in taking plaintiff into custody and applying the handcuffs.  (*See* Payton Decl., ¶¶ 11-14; Engstrom Decl., ¶¶ 10-12; Newhard Decl., ¶ 8; Dobson Decl., ¶¶ 14-16.) The video from Officer Payton's patrol car shows without dispute the extraordinary courtesy and care the City defendants provided plaintiff during the course of his arrest.  (Rees Decl., Ex. 1, Arrest video.)

Similarly, Officer Newhard followed the City's procedures for handling plaintiff's service animal and other property.  (*See* Newhard Decl., ¶¶ 7, 12-15, Exs. 1-5.)

## III.    CONCLUSION

On May 23, 2014, plaintiff misunderstood the nature of his legal rights when he publicly displayed his genitalia in front of the federal courthouse as part of his "protest."  The City defendants, on the other hand, in arresting plaintiff for violating PCC 14A.40.030, responded within the legal rights of the community not to suffer plaintiff's coarse public display.

City defendants violated no federal right of plaintiff.  However if they did, that right was not clearly established to a reasonable police officer in the particularized factual context facing the City's officers.  As such, the individual City defendants are entitled to qualified immunity from any action under Section 1983.

Similarly, even if plaintiff suffered a deprivation of his rights under the Oregon Constitution, he has no claim for money damages against the City.  Plaintiff has no claim under state tort law.

Page  31  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
          OF LAW IN SUPPORT

The Court should grant City defendants' motion for summary judgment and dismiss plaintiff's action with prejudice.  Fed. R. Civ. P. 56(a).

Dated:  October 8, 2015

Respectfully submitted,

/s/ William W. Manlove
WILLIAM W. MANLOVE, OSB # 891607
Senior Deputy City Attorney
Telephone: (503) 823-4047

Page  32  – CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
    OF LAW IN SUPPORT

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing CITY DEFENDANTS' MOTION FOR

SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT on:

> Matthew T. Mglej
> 604 SE 67th Ave
> Hillsboro, OR  97123
> *Plaintiff-Pro Se*

on October 8, 2015, by causing a full, true and correct copy thereof, addressed to the last-known

address (or fax number) of said attorney, to be sent by the following method(s):

☐　　by **mail** in a sealed envelope, with postage paid, and deposited with the U.S. Postal Service in Portland, Oregon.

☐　　by **hand delivery.**

☐　　by **email** pursuant to LR 5-2(b).

☐　　by **facsimile transmission.**

☒　　by **email.** *(Per plaintiff's written request we provide service electronically)*

　　　　　　　　　　　　　　*/s/ William W. Manlove*
　　　　　　　　　　　　　　WILLIAM W. MANLOVE, OSB #891607
　　　　　　　　　　　　　　Senior Deputy City Attorney
　　　　　　　　　　　　　　Telephone: (503) 823-4047

Page  1  –  CERTIFICATE OF SERVICE