JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON
B. Andrew Jones, OSB No. 091786
Assistant County Attorney
501 S.E. Hawthorne Blvd., Suite 500
Portland, Oregon 97214
Telephone:  (503) 988-3138
Facsimile:   (503) 988-3377
Email: andy.jones@multco.us
         Of Attorneys for Defendant Multnomah County


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| **MATTHEW T. MGLEJ,** | Civil No. 3:15-cv-00096-MO |
| Plaintiff, | |
| v. | DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW |
| **MULTNOMAH COUNTY, a political subdivision of the state of Oregon; MULTNOMAH COUNTY SHERIFF'S OFFICE, a subdivision of the state of Oregon; MULTNOMAH COUNTY DEPARTMENT OF CORRECTIONS, a subdivision of the state of Oregon; PORTLANT POLICE BUREAU, a subdivision of the state of Oregon; OFFICE CRAIG DOBSON, an office of the City of Portland; OFFICER SARAH PAYTON, an officer of the City of Portland; OFFICER ENGSTROM, an officer of the City of Portland; OFFICER NEWHARD, an officer of the City of Portland and JOHN DOES I-X, as follows,** | *ORAL ARGUMENT REQUESTED* |
| Defendants. | |

DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW

# TABLE OF CONTENTS

I.    CERTIFICATION ................................................................................................ 1

II.   MOTION ............................................................................................................. 1

III.  SUMMARY OF MATERIAL FACTS.............................................................. 1

IV.   SUMMARY OF PLAINTIFF'S CLAIMS AND PLEADING....................... 9

V.    SUMMARY JUDGMENT STANDARD.......................................................... 10

VI.   FEDERAL CLAIMS ......................................................................................... 11

    1.   STANDARD FOR *MONELL* CLAIM AGAINST MULTNOMAH COUNTY........ 11

    2.   CLAIM 1 – FOURTH AMENDMENT – UNLAWFUL ARREST AND
        DETENTION ................................................................................................ 12

    3.   CLAIM 2 – FOURTH AMENDMENT – EXCESSIVE FORCE ............................. 13

    4.   CLAIM 3 – FOURTH AND FOURTEENTH AMENDMENT – MALICIOUS
        PROSECUTION ........................................................................................... 13

    5.   CLAIM 4 – FIRST AMENDMENT – PORTLAND INDECENCY ORDINANCES.
        ...................................................................................................................... 14

    6.   CLAIM 5 – FOURTH AMENDMENT – CRUEL AND UNUSUAL PUNISHMENT
        ...................................................................................................................... 14

VII.  OREGON CONSTITUTIONAL CLAIMS ....................................................... 17

    1.   CLAIMS 6, 7, 8, 9 AND 10 – OREGON CONSTITUTION, ARTICLE 1,
        SECTIONS 8, 9, 13, 15, 16………….. .......................................................... 17

VIII. OREGON TORT CLAIMS ............................................................................... 17

    1.   CLAIM 11 – BATTERY ............................................................................... 17

    2.   CLAIM 12 – ASSAULT................................................................................ 19

    3.   CLAIM 13 – NEGLIGENCE ......................................................................... 20

IX.   CONCLUSION .................................................................................................. 22

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

## TABLE OF AUTHORITIES

### CASES

*Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004)..................................... 14

*Ballard v. City of Albany*, 221 Or. App. 630, 641, 191 P.3d 679 (2008) ..................................... 18

*Barcik v. Kubiaczyk*, 321 Or. 174, 190, 895 P.2d 765 (1995) ..................................... 17

*Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 400 (1997) ..................................... 11

*Bollam v. Fireman's Fund Ins. Co.*, 302 Or. 343, 347–348, 730 P2d 542 (1986) ..................... 21

*Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527, 89 Cal. Rptr. 3d 801 (2009) ......................... 18

*Buchler v. State*, 316 Or. 499, 504, 853 P.2d 798 (1993) ......................................... 20

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ............... 11

*Chavez v. Martinez*, 538 U.S. 760, 789, 123 S. Ct. 1994 (2003)........................................ 16

*Cleland v. Wilcox*, 273 Or. 883, 887, 543 P2d 1032 (1975)........................................... 21

*Cook v. Kinzua Pine Mills Co.*, 207 Or. 34, 48-49, 293 P2d 717 (1956) ............................... 17, 19

*County of Riverside v. McLaughlin*, 500 U.S. 44, 58-59, 111 S. Ct. 1661 (1991) ...................... 16

*County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S. Ct. 1708 (1998)............................. 16

*Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)........................................ 14

*Getchell v. Mansfield*, 260 Or 174, 179, 489 P2d 953 (1971) ............................................. 11

*Gigler v. City of Klamath Falls*, 21 Or. App. 753, 759-760, 537 P.2d 121 (1975) ............... 17, 19

*Hunter v. Eugene*, 309 Or 298, 302, 787 P2d 881 (1990) ............................................. 17

*Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) ...................... 11

*Joshi v. Providence Health Sys. of Or. Corp.*, 198 Or. App. 535, 545, 108 P3d 1195 (2005)..... 21

*Juran v. Independence Or. Cent. Sch. Dist. 13J*, 898 F. Supp. 728, 730, 1995 U.S. Dist. LEXIS 12801 (D. Or. 1995) ............................................................................ 17

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).................................... passim

*Oltarzewski v. Ruggiero*, 830 F.2d 136, 138-39 (9th Cir. 1987) ....................................... 11

*Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155 (1976) ............................................. 16

*Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1495, 21 Cal. Rptr. 3d 36 (2004) ............................ 18

*Pierce v. Multnomah County*, 76 F.3d 1032, 1042-1043 (9th Cir. 1996)................................. 14

*Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008)................................................ 15

*Rich v. Cooper*, 234 Or. 300, 309-310, 380 P.2d 613 (1963) ......................................... 17

*Sheehan v. City & County of San Francisco*, 743 F.3d 1211, 1230 (9th Cir. 2014) .................. 15

*Sigurdson v. Del Guercio*, 241 F.2d 480, 482 (9th Cir. 1956)........................................... 9

*Solberg v. Johnson*, 306 Or. 484, 490-91, 760 P2d 867 (1988) ....................................... 20

*St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915 (1988) ............................... 12, 15

*Stoot v. City of Everett*, 582 F.3d 910, 928 (9th Cir. 2009) ........................................ 16

*Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989)............................... 12, 13

*Tiedemann v. Radiation Therapy Consultants, P.C.*, 299 Or 238, 246, 701 P2d 440, 446 (1985) ..........................................................................................................11

*Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir.1996) ................................... 12

*Wimett v. Sothern*, 2013 U.S. Dist. LEXIS 107371, 6 (D. Or. July 11, 2013) .......................... 9

ii – TABLE OF AUTHORITIES

**RULES**

F.R.C.P. 56(c) ............................................................................................................... 10
Fed. R. Civ. P. 56(e) ....................................................................................................... 11

**CONSTITUTIONAL PROVISIONS**

28 U.S.C.A. ...................................................................................................................... 9
42 U.S.C. §1983 ....................................................................................................... 9, 11, 13

iii – TABLE OF AUTHORITIES

## I.    CERTIFICATION

Pursuant to Local Rule 7-1, Defendant Multnomah County certifies that it has made a good faith effort to resolve the disputes and are unable to do so and the court's ruling is now necessary.  The parties discussed dispositive motions on August 21, 2015, with the Court explaining to Plaintiff the process of dispositive motions that would be filed by both sets of Defendants.  Counsel for the County attempted to call and confer on September 30, 2015 and again on October 7, 2015, but the phone number for Plaintiff was not answered, and did not give an opportunity to leave voicemail.  In addition to these calls, counsel emailed Plaintiff twice to attempt to confer, both of which were not returned.

## II.    MOTION

Defendant Multnomah County ("County"), pursuant to Federal Rule of Civil Procedure 56, respectfully moves this court for summary judgment on each and every claim by Plaintiff Matthew Mglej.  In support of this motion, the County relies upon the pleadings on file with this court, the Declaration of Raimond Adgers, the Declaration of Bruce Bledsoe, the Declaration of Ryan Gerrick, the Declaration of Nancy Griffith, the Declaration of Steven Nicholson, the Declaration of B. Andrew Jones, and the following Points and Authorities.

## III.    SUMMARY OF MATERIAL FACTS

Plaintiff Matthew Mglej was arrested by Portland Police Bureau Officers on May 23, 2014.  (Amended Complaint, Docket 33, ¶¶ 13 and 31; PPB Answer, Docket # 36, p. 3).  The officers drove Plaintiff to the Multnomah County Detention Center ("MCDC") for booking into County custody.  (PPB Answer, Docket #36, p. 5).  Plaintiff was brought to MCDC naked, his hands restrained by a set of handcuffs that had been applied before arriving.  (PPB Answer, Docket # 36, pp. 3 and 5).

Page 1 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM OF LAW

Deputies asked Plaintiff to step out of the patrol car so they could escort him into the jail for booking, and Plaintiff refused to answer these requests.  (Declaration of Bruce Bledsoe, ¶ 3). Because Plaintiff ignored or disregarded these directions, Deputy Kosmin had to physically pull Plaintiff from the car, and several deputies then lifted Plaintiff up onto his feet.  (*Id., ¶¶* 3-4). Deputy Bledsoe removed Plaintiff's right handcuff from his wrist and re-secured his hands behind him for officer safety, securing the right handcuff around Plaintiff's wrist near the hand and checking for tightness.  (*Id.*, ¶¶ 4-5).  Deputy Bledsoe held Plaintiff's arms to the side, keeping control of Plaintiff's uncuffed arm by holding onto Plaintiff's arm and wrist.  (*Id.*). Plaintiff did not say anything about injuries to his wrists, or complain about the handcuffs being painful or too tight.  (*Id.*).

After re-securing the right handcuff, deputies escorted Plaintiff to the central booking counter.  (*Id.*, ¶ 6).  Plaintiff did not complain to the deputies that his handcuffs were too tight or injuring him, saying only that he was choosing to remain silent. (Bledsoe Decl, ¶ 6; Declaration of B. Andrew Jones Declaration, ¶ 2; Exhibit 1, pp. 8-10).

MCDC is the central jail facility for the County, through which all incoming detainees are processed.  (Declaration of Raimond Adgers, ¶ 3).  MCDC is a high volume facility, with the County admitting seventy to eighty incoming detainees per day.  (Adgers Decl, ¶ 4).  Because of this volume, the County uses standard procedures for both intake and release of detainees.  (*Id.*). The County also keeps and maintains, in the County's regular course of business, various records of different steps in the booking and/or release process for each inmate, keeping these records by inmate name and eSWIS identification number.  (*Id.*, ¶¶ 4-5).

Page 2 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
            JUDGMENT AND MEMORANDUM OF LAW

Plaintiff began the booking process in the early afternoon of May 23, 2014, and Sergeant Steven Nicholson was in charge of intake at that time. (Adgers Decl, ¶ 5; Exhibit 1; Declaration of Steven Nicholson, ¶ 4). During the booking process, due to concerns about Plaintiff's erratic behavior, and due to Portland Police reports that Plaintiff was uncooperative, Plaintiff was kept handcuffed, with deputies standing beside and around Plaintiff to ensure he stayed in place. (Nicholson Decl, ¶ 4).

The arresting officer, Defendant Sarah Payton of the Portland Police Bureau, provided deputies with a standardized "Jail Intake Booking Screening Questions" form about the Plaintiff, in which Officer Payton indicated Plaintiff had exhibited behavior suggesting mental illness, that she had some indication that Plaintiff was not following instructions, and that she felt there would be a need to keep Plaintiff separate from others housed at MCDC. (Adgers Decl, ¶ 5; Exhibit 1, p. 1). Deputies then asked Plaintiff several more intake questions, including whether Plaintiff was presently having suicidal thoughts. (*Id.*, Declaration of Ryan Garrick, ¶ 3; Bledsoe Decl, ¶ 6; Nicholson Decl, ¶¶ 5-6).

Plaintiff would not answer questions as to whether he was having suicidal thoughts, saying only that he refused to speak to anyone until he had a lawyer. (Jones Decl, ¶ 2; Exhibit 1, pp. 2-3). Deputies repeatedly asked Plaintiff to answer if he was suicidal, telling him that if he refused to answer that question in particular, that he would be considered a suicide risk and placed on protective suicide watch. (Garrick Decl, ¶ 3; Nicholson Decl, ¶ 6). Plaintiff continued to refuse to give an answer. (*Id.*). As a result, Deputy Gainer marked "yes" to the question on the intake form, noting that Plaintiff refused to answer. (Adgers Decl ¶ 5, Exhibit 1, pp. 2 and 4). Plaintiff has no recollection of what deputies were asking him at that time, only that he chose to remain silent. (Jones Decl ¶ 2, Exhibit 1, pp. 11-12).

Page 3 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
                JUDGMENT AND MEMORANDUM OF LAW

The Multnomah County Sheriff's Office has policies to prevent inmate suicide or self-harm.  (Adgers Decl, ¶¶ 6-9, Exhibits 2 and 4).  In addition to the inmate classification interview with a deputy, Multnomah County Corrections Health personnel conduct a separate evaluation of incoming detainees, again asking the inmate about any thoughts or feelings of suicide or self-harm.  (*Id.*).  In the event any staff member, either from the Sheriff's Office or Corrections Health, has a concern that an inmate is a risk for suicide or self-harm, the staff member is authorized to place that inmate on suicide watch, and the decision is to be documented by the MCDC Sergeant in Charge and a Corrections Health member.  (Adgers Decl, ¶¶ 6-7; Exhibit 2).

PPB's report that Plaintiff had exhibited signs of mental illness, taken together with Plaintiff's refusal to give deputies any indication as to whether he was suicidal and with Plaintiff's erratic behavior and refusal to communicate or cooperate with staff, led to the decision to place Plaintiff on suicide watch as a precaution.  (Nicholson Decl, ¶ 6).  Sergeant Steven Nicholson completed a Suicide Watch Form for Plaintiff, signed by both himself and Nurse Bennefield of Corrections Health, placing Plaintiff on active suicide watch at 4:30 p.m. on May 23, 2014.  (Nicholson Decl, ¶ 6: Exhibit 1).

Pursuant to Sheriff's Office policy, an inmate on "active" suicide watch is housed in a isolation cell by themselves, and a Sheriff's deputy performs no less than five (5) random visual checks of the inmate per hour by looking through the window of the inmate's cell.  (Adgers Decl, ¶¶ 8-9; Exhibit 3).   Deputies took Plaintiff to isolation cell #4 for housing and suicide watch.  (Nicholson Decl, ¶ 7; Adgers Decl, ¶ 8, Exhibit 3).

Before Plaintiff was placed into the isolation cell, his handcuffs needed to be removed. (Nicholson Decl, ¶ 7, Bledsoe Decl, ¶¶ 7-8).  Deputies kept Plaintiff's hands restrained during his booking and transport to the isolation cell, as they were concerned about his erratic behavior

Page 4 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
                JUDGMENT AND MEMORANDUM OF LAW

and his failure to respond to directions.  (Nichoson Decl, ¶¶ 4 and 6).  Further, because of these concerns, they utilized a tether cord to uncuff Plaintiff through a food port in the isolation cell door.  (Nicholson Decl, ¶ 11, Bledsoe Decl, ¶ 7).

Uncuffing through the food port is a common procedure, typically done with a nylon tether cord attached to an inmate's handcuffs.  (Nicholson Decl, ¶¶ 6-10, Exhibits 2-5).  Deputies open the cell door, feed the tether through the door, place the inmate in the cell, and then position the inmate close to the door frame, closing the door behind him with the tether fed out through the port.  (*Id.*).  The cord is used to make sure the inmate cannot move away from the door, which would then require deputies to go into the cell, and regain physical control, creating a greater risk of harm to the inmate or the deputies.  (*Id.*).

Once the door is closed, deputies give verbal directions to the inmate to reach their hands out through the food port to give the deputies access to the inmate's cuffs.  (*Id.*).  Multiple deputies are involved in the process to make sure the inmate is kept safe and secure, typically with one deputy holding each hand, another deputy holding the cord, and a fourth deputy uncuffing the keys.  (*Id.*).  If an inmate follows directions, the process is benign and takes less than a minute to get the inmate into the cell and out of the handcuffs.  (*Id.*).

In this case, there were multiple deputies present to secure Plaintiff's arms to avoid injury.  (Nicholson Decl, ¶ 11, Bledsoe Decl, ¶ 8, Garrick Decl, ¶ 4).  As with prior requests and commands from Portland Police and at the booking counter, Plaintiff continued to either ignore or refuse to comply with requests to move into the cell to have his cuffs removed.  (Bledsoe Decl, ¶ 8, Nicholson Decl, ¶ 11).  (*Id.*). Deputies did not, as Plaintiff alleges, pull Plaintiff violently against the door or use force to get his hands out.  (Bledsoe Decl, ¶¶ 8-9; Nicholson Decl, ¶ 11).

Page 5 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
         JUDGMENT AND MEMORANDUM OF LAW

Rather, the deputies simply held the tether in place to keep Plaintiff from moving away from the door, repeatedly asking Plaintiff to put his hands out the food port so they could remove his handcuffs. (*Id.*). Once Plaintiff put his hands near the food port for deputies to reach them, deputies were able to remove the cuffs and hand them back to Officer Payton, who was standing by to get her handcuffs. (*Id.*). Plaintiff began picking and scratching at his wrists after being placed into the isolation cell. (Bledsoe Decl, ¶¶ 10-11).

After Plaintiff was safely in the cell, deputies repeatedly checked on Plaintiff, consistent with policy, immediately after starting active watch. (Adgers Decl., ¶ 8, Exhibit 3). In addition, Corrections Health nursing staff repeatedly checked in on Plaintiff's well-being. (Declaration of Nancy Griffith, ¶¶ 4-5; Exhibit 1). A nurse saw Plaintiff on May 23rd, 2014 at 4:30 p.m., again at 4:45 p.m., and again at 9:25 p.m. (*Id.*).

The nurses observed "superficial lacerations" to Plaintiff's wrists and feet, but Plaintiff refused any medical treatment or offers by the nurse to clean and dress the lacerations. (*Id.*). Portland Police photographed these scratches, along with scrapes on the tops of Plaintiff's feet which occurred when he refused to stand up and Portland Police Officers had to pick him up and carry him to the car. (Jones Decl, ¶ 2, Exhibit 1, pp. 4-6 and 13-20). These scratches were not caused by handcuffs, but are consistent with Plaintiff picking at his wrists. (Bledsoe Decl, ¶¶ 10-11). The handcuffs were applied and checked for tightness around the base of his ulnar bone, at the junction of the wrist and hand, and the scratches shown in the photographs taken by Portland Police are not consistent with the handcuffs being fastened on that area of Plaintiff's wrists. (*Id.*). Plaintiff was not injured during the uncuffing process. (*Id.*).

Page 6 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
        JUDGMENT AND MEMORANDUM OF LAW

The County requires the inmate be evaluated by a mental health professional before that inmate is taken off of suicide watch.  (Adgers Decl., ¶ 9; Exhibit 4).  At the time of Plaintiff's detention, Corrections Health did not have the budget to keep a mental health professional on premises around the clock.  (Griffith Decl, ¶ 6).  Instead, the County staffed MCDC with a mental health professional during normal business hours and inmates on suicide watch would be evaluated as soon as practicable if there were no immediate signs of medical emergency.  (*Id.*).  During the night of May 23th and the early morning hours of May 24th, County Corrections and Corrections Health staff continually checked on Plaintiff to ensure his well being, and that he was not at immediate risk of harm.  (Griffith Decl, ¶ 5; Exhibit 1; Adgers Decl, ¶ 8, Exhibit 3).

The Multnomah County Circuit Court presiding judge, in delegating limited jail release authority to the Sheriff, has given specific orders with respect to its release of inmates who are determined to be suicidal or at risk of self-harm.  (Adgers Decl, ¶ 10; Exhibit 5).  The court's order (emphasis added) gives specific direction with respect to two circumstances implicated during Plaintiff's detention on May 23, 2014:

> "The release assistance officers shall review the jail population and may make releases, subject to the restrictions set out in this order, up to the start of trial, <u>in those instances when an initial release was not possible due (1) to the refusal of the person to cooperate or incapacity to engage in the interview process</u>...." (Order, p 2, paragraph 1).

> …      …      …

> "<u>Release assistance officers may override any release score or decision to hold in custody until the next court appearance any person identified as a "risk to self" by a medical evaluation prefomred (sic) by Correction Health staff and the person is placed on "suicide watch" by the Multnomah County Sheriff's staff.</u>  This specific override authority is subject to the following conditions: 1) a mental health evaluation will be completed on the person prior to court appearance on the next judicial day; 2) a system is put in

Page 7 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM OF LAW

place to assure that the release assistance officers are informed when a person is given  risk to self medical evaluation and is placed on suicide watch; and 3) a system is put in place to assure the court is informed of the suicide watch and the mental health assessment at or prior to the court appearance at which the release of the person will be next before the court.  The purpose of this specific override condition is to hold the person to the person's next court appearance to permit a judge to be informed of all factors relevant to the release of the person from custody.  (Order, p 3, paragraph 4).

(*Id.*)

Because Plaintiff was on active suicide watch, the Sheriff's Office waited for a mental health professional to evaluate Plaintiff before making any release determination.  (Adgers Decl, ¶¶ 10-12, Griffith Decl, ¶ 7, Exhibit 1).  Corrections Health Nurses and Sheriff's deputies made continuous checks on Plaintiff throughout the evening of May 23rd and into the early morning hours of May 24th.  (Adgers Decl, ¶ 9; Exhibit 4; Griffith Decl, ¶¶ 5 and 7; Exhibit 1).

On May 24, 2014, County Mental Health Consultant Ann Gottling evaluated Plaintiff around 10:00 a.m.  (Griffith Decl, ¶¶ 5 and 7; Exhibit 1).  After performing her evaluation, Ms. Gottling notified the Sheriff's Office they could discontinue active suicide watch. (*Id.*).  Ms. Gottling signed and dated the suicide watch termination portion of the form, along with the on-duty Sergeant from the Sheriff's Office.  (Nicholson Decl, ¶ 5; Exhibit 1; Adgers Decl, ¶ 11, Exhibit 6).

Plaintiff was promptly processed for release on Saturday the 24th, rather than holding him until his court date the next Tuesday (Monday was the Memorial Day holiday).  (Adgers Decl, ¶ 12, Exhibit 6).  Plaintiff was taken off suicide watch at 10:00 a.m., and jail records show he was released from custody at approximately 10:47 a.m. on Saturday morning, having spent less than a day in County custody.  (*Id.*).

Page 8 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
          JUDGMENT AND MEMORANDUM OF LAW

IV.     **SUMMARY OF PLAINTIFF'S CLAIMS AND PLEADING**

Plaintiff has alleged thirteen (13) separate causes of action against Multnomah County, the Multnomah County Sheriff's Office, and the Multnomah County Department of Corrections. The County is the sole proper defendant as a public entity, as the Sheriff's Office is a bureau within the larger County, and the "Department of Corrections" is not a Multnomah County entity.  See *Wimett v. Sothern*, 2013 U.S. Dist. LEXIS 107371, 6 (D. Or. July 11, 2013), citing *Keller v. City of Portland*, 1998 U.S. Dist. LEXIS 21743 (D. Or. Nov. 13, 1998)(police bureau is not a separate entity from the city itself, city sole proper municipal defendant in action under 42 U.S.C. §1983).  As such, this motion is directed against Plaintiff's claims against Multnomah County, and the bureau entities should be dismissed with prejudice, and/or subsumed into the court's decisions against the County alone.   Plaintiff filed this case with "Doe" defendants, who are a legal fiction not subject to suit or judgment.  See *Sigurdson v. Del Guercio*, 241 F.2d 480, 482 (9th Cir. 1956)("These John Doe complaints are dangerous at any time. It is inviting disaster to allow them to be filed and to allow fictitious persons to remain defendants if the complaint is still of record….Although the fact that the Rules of Civil Procedure, 28 U.S.C.A., contain no express prohibition upon the subject, there is no authority of which we are aware for the joining of fictitious defendants in an action under a federal statute.").  However, a Doe defendant may be used as a placeholder to discover identity of actual individuals subject to suit during discovery.

Because Plaintiff pled the case with "Doe" defendants, the County provided Plaintiff with requested information in discovery to give Plaintiff the opportunity to identify what, if any, individuals that Plaintiff wished to name.  The County identified the deputies who were present during Plaintiff's booking.  (Jones Decl, ¶ 3; Exhibit 2, p. 3).  The County provided a video of the booking counter showing the deputies identified in the Interrogatory response.  (Jones Decl, ¶

Page 9 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
              JUDGMENT AND MEMORANDUM OF LAW

4; Exhibit 3, p. 4).  The City provided video from Officer Payton's car, a portion of which shows County deputies removing Plaintiff from the car, all of whom were identified in Interrogatory responses.   (Jones Decl ¶ 5, Exhibit 4).  The County provided booking and classification records identifying classification deputies and staff.  (Jones Decl ¶ 3, Exhibit 2, p. 3).  The County provided Plaintiff with his Corrections Health records showing which County Corrections Health personnel worked with him.   (*Id.*, Exhibit 3, pp. 3-4).

Plaintiff sent a Second Set of Interrogatories via email on September 13, 2015, less than thirty days from the Court's discovery cutoff, asking for additional identification of individuals, (Jones Decl ¶ 7, Exhibit 6), and then moved to amend the complaint to identify Doe defendants on September 24th (Docket # 44).  The Court gave Plaintiff until October 8th, 2015 to amend to name individual defendants.  (Docket # 45).

 Despite being served with less than the thirty (30) days to respond before the deadline, the County provided responses on September 25th, 2015.  (Jones Decl ¶ 8, Exhibit 7).

The Court's scheduling deadline of October 8th, 2015 has passed without an amendment. The only claims are therefore against the County as an entity.  Defendant Multnomah County now moves for summary judgment against each and every claim brought by Plaintiff under federal and state law in his Amendment Complaint (Docket # 33).

## V.    SUMMARY JUDGMENT STANDARD

 Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and providing evidence in support of its motion which demonstrates the absence of a

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party satisfies this initial burden, the burden shifts to the opposing party, who "must present significant probative evidence tending to support its claim or defense." *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Further, the non-moving party must satisfy its burden by coming forward with sufficient evidence demonstrating to the Court that there are genuine issues of material fact to be decided at trial. Fed. R. Civ. P. 56(e). For a medical negligence claim under Oregon law, a plaintiff bears the burden of coming forward with expert testimony as to the applicable standard of care in the community to overcome a motion for summary judgment. *Tiedemann v. Radiation Therapy Consultants, P.C.*, 299 Or 238, 246, 701 P2d 440, 446 (1985), citing *Getchell v. Mansfield*, 260 Or 174, 179, 489 P2d 953 (1971).

As the Ninth Circuit has stated, "[A]n adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in [Fed. R. Civ. P. 56] must set forth specific facts showing that there is a genuine issue for trial." *Oltarzewski v. Ruggiero*, 830 F.2d 136, 138-39 (9th Cir. 1987).

## VI.    FEDERAL CLAIMS

### 1.    Standard for *Monell* Claim against Multnomah County

With respect to Plaintiff's civil rights claims against the County, *respondeat superior* cannot form a basis for municipal § 1983 liability; a municipality may be liable only when the execution of a municipal policy, practice, or custom is the "moving force" behind the violation of a plaintiff's civil rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 400 (1997). Four elements are required: (1) a violation

Page 11 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
            JUDGMENT AND MEMORANDUM OF LAW

of plaintiff's constitutional right; (2) the existence of a municipal policy, practice, or custom; (3) the policy, custom, or practice constituted deliberate indifference to plaintiff's constitutional rights; and, (4) that the policy, practice, or custom was the moving force behind the constitutional violation. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir.1996).

For a policy claim, a plaintiff must plead and prove facts demonstrating that the challenged municipal action "implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. For a practice or custom claim, plaintiff must plead and prove facts showing a widespread municipal course of action that, while not ratified or adopted by a policymaker, is nonetheless "so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915 (1988). Proof of random acts or isolated events are not sufficient to establish a municipal custom. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989).

Plaintiff's Amended Complaint brings a *Monell* claim against the County in Claims 1-4. For the following reasons, the County is entitled to summary judgment.

### 2.    Claim 1 – Fourth Amendment – Unlawful Arrest and Detention

Plaintiff alleges he was unlawfully arrested by Portland Police Officers Payton and Engstrom (Amended Complaint, ¶¶ 95-100), but alleges that the actions of the officers "were based on the practices and customs of Multnomah County's Sheriff's Office." Portland Police are wholly separate from Multnomah County, and any arrest decisions by the Portland Police Bureau Officers are unrelated to any County practice or custom.

Page 12 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
　　　　　JUDGMENT AND MEMORANDUM OF LAW

The County's involvement with Plaintiff began only *after* Plaintiff had been arrested, handcuffed, and transported to the Multnomah County Detention Center.  Notwithstanding the legality of the arrest, Multnomah County cannot be liable for the actions of Portland Police under a *Monell* theory as Plaintiff has alleged.  Summary judgment for the County is warranted.

**3.    Claim 2 – Fourth Amendment – Excessive Force**

Plaintiff cannot satisfy a *Monell* claim for excessive force because he cannot offer evidence to support his allegation that any of the actions described in his Amended Complaint were pursuant to municipal policy, practice, or custom.  Further, Plaintiff's claim is for one isolated incident, in and of itself insufficient to establish municipal liability.  *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989).  As there is no claim against a named individual County agent or actor, the *Monell* claim is the only claim directed against the County. The County is entitled to summary judgment on the *Monell* excessive force claim.

**4.    Claim 3 – Fourth and Fourteenth Amendment – Malicious Prosecution**

Plaintiff's Third Claim for Relief, malicious prosecution, claims that Officers Payton, Engstrom, and Does were "acting as an agent of Multnomah County."  (Amended Complaint, ¶ 122).  As noted above, Plaintiff cannot come forward with evidence to support this assertion – the Portland Police Officers who made the arrest decision were neither County employees nor acting as agents of the County.   Plaintiff cannot show a County policy, practice, or custom as the 'moving force' behind any such action, and therefore the County is entitled to summary judgment.

Further, a malicious prosecution claim under 42 U.S.C. §1983 requires a plaintiff "show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right."

Page 13 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
            JUDGMENT AND MEMORANDUM OF LAW

*Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004), citing *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).  The County had no role in the arrest, and had no role in prosecuting the Plaintiff – the arrest was made by Portland Police, and the criminal case was prosecuted by the State of Oregon.  Plaintiff can show no malice on the part of the County and no role in the prosecution, and therefore the County is entitled to summary judgment on this claim.

      5.      **Claim 4 – First Amendment – Portland Indecency Ordinances**

As with prior claims, Plaintiff alleges in his Fourth claim for relief that the PPB Officers' actions in arresting Plaintiff for violation of a Portland ordinance "were consistent with the practices and customers of the Multnomah County Sheriff's Office."  Again, the County has no relationship with the Portland Police Officers, and these Officers act independent of any County policies.  There is no factual basis for a *Monell* claim against Multnomah County for the acts of Portland Police Officers.

      6.      **Claim 5 – Fourth Amendment – Cruel and Unusual Punishment**

Plaintiff's Fifth Claim complains certain actions by Portland Police and by the County constituted "cruel and unusual punishment" in contravention of the Fourth Amendment. (Amended Complaint, ¶¶ 135-147).  The Eighth Amendment, not the Fourth, gives this guarantee, and the Eighth Amendment does not attach to pre-trial, pre-arraignment detainees, as was Plaintiff during his overnight detention.  See *Pierce v. Multnomah County*, 76 F.3d 1032, 1042-1043 (9th Cir. 1996)(Fourth Amendment applies to duration, justification, and conditions for pre-arraignment detainees).

Page 14 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
           JUDGMENT AND MEMORANDUM OF LAW

The first portion of the Fifth Claim for relief mirrors the Second Claim for relief for excessive force.  (Compare Paragraph 136 with 109-115).  As noted above, Plaintiff cannot identify any County policy, practice, or custom that was the "moving force" behind any constitutional violation involving the force used, and therefore he cannot maintain a claim against the County.  *Monell,* 436 U.S. at 691-694.

Plaintiff cannot survive summary judgment with an unsubstantiated "failure to train" allegation.  Such a claim requires some evidence that a County's training program "amounts to deliberate indifference to the rights of persons with whom the police come into contact," and that such failure in training was the cause of the deprivation of right.  *Sheehan v. City & County of San Francisco*, 743 F.3d 1211, 1230 (9th Cir. 2014), citing *Price v. Sery,* 513 F.3d 962, 973 (9th Cir. 2008).  There is no evidence that County training was inadequate, that any action was a result of any inadequacy in training, or even that there are widespread failures or occurrence at the County that would be so 'permanent and well-settled' as to constitute municipal policy.  *Praprotnik*, 485 U.S. at 127.

Plaintiff alleges he was over detained because "three medical examiners cleared him." (Amended Complaint, ¶ 143).  However, the County detained Plaintiff upon arrest by Portland Police.  The County placed Plaintiff on suicide watch only after his refusal to cooperate and behavior led County staff to be concerned he was a suicide risk.  Indeed, the County release authority is derived from the presiding court, which specifically directs the County to take the action it did, namely to hold Plaintiff pending mental health assessment.   The County followed protocols as established by the presiding court to make sure Plaintiff was evaluated by a qualified mental health professional before release.

Page 15 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
             JUDGMENT AND MEMORANDUM OF LAW

Plaintiff does not establish what policy he is challenging, or how the County's actions would constitute a Fourth Amendment violation, as he was released in less than twenty-four hours, even with the temporary suicide watch restriction.  See *County of Riverside v. McLaughlin*, 500 U.S. 44, 58-59, 111 S. Ct. 1661 (1991)(probable cause determination within forty-eight hours of detention satisfies requirements of Fourth Amendment).

The majority of the remaining allegations by Plaintiff, even if proven, do not constitute violations of Plaintiff's constitutional rights.   (Amended Complaint, ¶¶ 137-44).  As with other claims, Plaintiff fails to identify a challenged policy, practice, or custom as the 'moving force' and therefore cannot make these claims, no matter what the constitutional claims at issue.

Assuming Plaintiff's claim is directed at the Fourteenth Amendment's guarantee of substantive due process, the Plaintiff bears a heavy burden.  The due process clause was not meant to serve as a "font of tort law" to supplement state law causes of action.   *Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155 (1976).  The plaintiff must show deliberate indifference to civil rights on the part of the County such that it 'shocks the conscience' when the record is reviewed.  *County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S. Ct. 1708 (1998). Negligent, offensive or objectionable conduct on the part of a government actor is not enough; the police conduct must rise to the level of "[police] torture or its close equivalents."  *Stoot v. City of Everett*, 582 F.3d 910, 928 (9th Cir. 2009), citing *Chavez v. Martinez*, 538 U.S. 760, 789, 123 S. Ct. 1994 (2003).

Plaintiff was kept for less than a day in isolation based on his refusal to cooperate and concerns about his well-being.  Plaintiff was monitored regularly by jail deputies and medical personnel.  None of these allegations are sufficient, even if Plaintiff had factual support, to rise to the level of a Fourteenth Amendment claim.

Page 16 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
            JUDGMENT AND MEMORANDUM OF LAW

## VII.    OREGON CONSTITUTIONAL CLAIMS

### 1.    <u>Claims 6, 7, 8, 9 and 10 – Oregon Constitution, Article 1, Sections 8, 9, 13, 15, 16</u>

Plaintiff's next five claims are predicated upon the Oregon Constitution.  However, plaintiff may not bring a private action for damages, either compensatory or nominal, relying upon the Oregon Constitution as the source of law.  *Hunter v. Eugene*, 309 Or. 298, 302, 787 P2d 881 (1990), *Barcik v. Kubiaczyk*, 321 Or. 174, 190, 895 P.2d 765 (1995).  Plaintiff may only sue the County (and the City defendants) under common law theories of tort, subject to the provisions of the Oregon Tort Claims act.  *Juran v. Independence Or. Cent. Sch. Dist. 13J*, 898 F. Supp. 728, 730, 1995 U.S. Dist. LEXIS 12801 (D. Or. 1995).

The County is entitled to summary judgment on Plaintiff's claims made under the Oregon Constitution.

## VIII.    OREGON TORT CLAIMS

### 1.    <u>Claim 11 – Battery</u>

Plaintiff's Eleventh Claim is for battery, defined under Oregon law as a intentional voluntary act that causes intentionally harmful or offensive contact with another.  *Cook v. Kinzua Pine Mills Co*., 207 Or. 34, 48-49, 293 P2d 717 (1956).  This tort requires a dual intention – the intent to act in such a way as to cause the contact, and the intent that the contact cause a legal injury.  See *Cook*, 207 Or. at 48 ("[B]attery involves more than an intentional act. There must be the intent to injure.").

Additionally, a Sheriff's Deputy is authorized to utilize reasonable force in the performance of their duties.  *Rich v. Cooper*, 234 Or. 300, 309-310, 380 P.2d 613 (1963), *Gigler v. Klamath Falls*, 21 Or. App. 753, 759-760, 537 P.2d 121 (1975).   Further, an officer is "presumed to be acting in good faith" when determining what amount of force is reasonable in a

Page 17 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM OF LAW

given circumstances. *Ballard v. City of Albany*, 221 Or. App. 630, 641, 191 P.3d 679 (2008).

The rule and presumptions recognize the reality that officers often have physical contact with

individuals as part of their job, that most contact is not intended to be injurious, and that officers

should not be made to appear before a jury for every physical contact, no matter how slight.  The

California Court of Appeals has elucidated the rationale behind such a standard:

> "A state law battery claim is a counterpart to a federal claim of excessive use of force.  In both, a plaintiff must prove that the peace officer's use of force was unreasonable." *Brown v. Ransweiler*, 171 Cal App 4th 516, 527, 89 Cal Rptr 3d 801 (2009), citing *Munoz v. City of Union City*, 120 Cal App 4th 1077, 1102, 16 Cal Rptr 3d 521 (2004).[1]

> ....     ....     ....

> "…p]lacing the burden of proof on the plaintiff to establish that an officer's use of force was unreasonable 'gives the police appropriate maneuvering room in which to make such judgments free from the need to justify every action in a court of law.'" *Brown*, 171 Cal App 4th at 528, 89 Cal Rptr 3d 801 (2009), citing *Martinez v. County of Los Angeles*, 47 Cal App 4th 334, 343, 54 Cal Rptr 2d 772 (1996); *Edson v. City of Anaheim*, 63 Cal App 4th 1269, 1273, 74 Cal Rptr 614 (1998).

> …     …     …

> "Indeed, any other rule would invite a flood of litigation.  If the law required police to defend the reasonableness of their conduct any time a plaintiff made a prima facie case by showing an offensive touching, the already heavy burdens law enforcement bears for us would become cetaceous.  And we would all suffer." *Edson*, 63 Cal App at 1275, 74 Cal Rptr 614."

/// /// ///

/// /// ///

---

[1] The elements of a civil battery between private citizens in California are identical to those in Oregon. *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527, 89 Cal. Rptr. 3d 801 (2009), citing *Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1495, 21 Cal. Rptr. 3d 36 (2004).

Page 18 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
        JUDGMENT AND MEMORANDUM OF LAW

So too, here.  The County escorted Plaintiff to the cell and removed the handcuffs.  There was no injury caused by the County in uncuffing the Plaintiff - the marks he complains of on his forearms are inconsistent with the area of his body the cuffs were applied, and consistent instead with the picking and scratching at the arms that deputies observed.

Further, Plaintiff repeatedly declined to answer any questions about his alleged injuries, on the grounds that he was not a doctor, and his medical records would be the best record of what injuries he sustained.  (Jones Decl, ¶ 2; Exhibit 1, p. 7).  The minimal force used to *remove* the handcuffs cannot rise to the level of common law battery.  The County is entitled to summary judgment.

### 2.    <u>Claim 12 – Assault</u>

Assault the "intentional attempt to do violence to the person of another, coupled with present ability to carry the intention into effect." *Cook v. Kinzua Pine Mills Co.,* 207 Or. 34, 48–49, 293 P2d 717 (1956).  While assault and battery are distinct torts, identical principles apply with respect to peace officers, namely "when physical violence exerted by the officers against the plaintiff was no more than necessary to accomplish the legitimate purpose of fulfilling their duty," then a deputy committed neither assault nor battery.  *Evans v. Multnomah County,* 2009 U.S. Dist. LEXIS 32112, 27 (D. Or. 2009), citing *Gigler v. Klamath Falls*, 21 Or. App. 763, 537 P.2d 121 (1975).

For the same reasons as with the battery claim, no County employee commited assault, as there is no evidence of an intentional attempt by any deputy to do violence, and in fact the removal of the handcuffs from behind would not have constituted an attempt to create apprehension on the part of Plaintiff.  Summary judgment is warranted.

Page 19 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
         JUDGMENT AND MEMORANDUM OF LAW

3.    **Claim 13 – Negligence**

Finally, Plaintiff claims that the County was negligent in the manner it removed his handcuffs, and in "failing to train on proper handling of service animals and pretrial detainees with service animals." (Amended Complaint, ¶¶ 229-230). The elements of a garden variety common law negligence claim in Oregon are: ""(1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent." *Solberg v. Johnson*, 306 Or. 484, 490-91, 760 P2d 867 (1988). However, the general foreseeability standard may be subsumed by a special relationship between the parties that creates, limits, or defines the duty owed by defendant to plaintiff. *Buchler v. State*, 316 Or. 499, 504, 853 P.2d 798 (1993).

First, as stated above with the battery claim, the County's deputies are charged with keeping the safety and security of the jail, and are justified in using reasonable amounts of physical force consistent with that goal. The County's actions in booking Plaintiff and removing his handcuffs were reasonable under the circumstances. No reasonable juror could conclude that any action of a County deputy either breached a recognized duty or created a foreseeable risk of harm by either action.

Further, with respect to the claims respecting Plaintiff's service animal, it is not clear what County actions Plaintiff contends were negligent. The Portland Police Bureau took Plaintiff's dog to Multnomah County Animal Services in East County. The Sheriff's Office did not *have* Plaintiff's animal because, due to Plaintiff's recalcitrance, the Portland Police had taken

Page 20 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
           JUDGMENT AND MEMORANDUM OF LAW

his service animal to a different location.  This was not due to County action or inaction, and cannot constitute a claim for negligence.

Finally, Plaintiff also must be able to show actual injury by the actions or inactions of the County, as nominal damages are not available for a common law negligence claim, *Bollam v. Fireman's Fund Ins. Co.*, 302 Or. 343, 347–348, 730 P2d 542 (1986), and he must demonstrate a causal link between challenged conduct and this actual injury.  *See Joshi v. Providence Health Sys. of Or. Corp.*, 198 Or. App. 535, 545, 108 P3d 1195 (2005)("Proof of cause-in-fact 'must have the quality of reasonable probability, and a mere possibility that the alleged negligence of the defendant was the . . . cause of plaintiff's injuries is not sufficient.' ")(quoting *Cleland v. Wilcox*, 273 Or. 883, 887, 543 P2d 1032 (1975)).

Plaintiff can show neither actual injury nor the necessary causation element.  There is no evidence of injury for Plaintiff being away from his service animal, and no causal link between the temporary time away from his service animal and any act by the County.  Plaintiff claims injury to parts of his body, for example his neck, back, and shoulders, but refuses to describe how they are injured, deferring to his "medical records."  (Jones Decl, ¶ 2; Exhibit 1, p. 7).  Additionally, Plaintiff is claiming permanent injury to his wrists, of the same type he alleges here, resulting from another handcuffing incident in Utah.  (See Case No. 2:13-cv-00713-CW-DBP, Docket #2, Complaint).  Plaintiff cannot show actual injury stemming from any action by the County or City in this case, as opposed to another unrelated cause, and therefore cannot create a fact issue for trial on all necessary elements of a negligence claim.

/// /// ///

/// /// ///

/// /// ///

Page 21 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
                 JUDGMENT AND MEMORANDUM OF LAW

## IX.    CONCLUSION

For the above reasons, Defendant Multnomah County respectfully requests the Court grant judgment in its favor, dismissing this action with prejudice, and awarding the County its necessary and recoverable costs and disbursements incurred.

DATED this 9th day of October, 2015.

Respectfully submitted,

JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON

**/s/ B. Andrew Jones**
_____
B. Andrew Jones, OSB No. 091786
Assistant County Attorney
    Of Attorneys for Defendant Multnomah County

Page 22 – DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY
             JUDGMENT AND MEMORANDUM OF LAW

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2015, I served the **DEFENDANT MULTNOMAH COUNTY'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF** on:

> Matthew T. Mglej
> 604 SE 67th Avenue
> Hillsboro, OR 97123
> Email: matthewmglej@gmail.com

by the following method or methods as indicated:

( **X** )   by **mailing** to said person(s) a true copy thereof, said copy placed in a sealed envelope, postage prepaid and addressed to said person(s) at the last known address for said person(s) as shown above, and deposited in the post office at Portland, Oregon, on the date set forth above.

( **X** )   by causing a true copy thereof to be **emailed** to said person(s) at the last known address for said person(s) as shown above, on the date set forth above.

(    )   by mailing via **certified mail, return receipt requested**, to said person(s) a true copy thereof, said copy placed in a sealed envelope, postage prepaid and addressed to said person(s) at the last known address for said person(s) as shown above, and deposited in the post office at Portland, Oregon, on the date set forth above.

(    )   by **facsimile** to said person(s) a true copy thereof at the facsimile number shown above, which is the last known facsimile number for said person(s) on the date set forth above. A copy of the confirmation report is attached hereto.

**/s/ Ona Davis**
_____

Ona Davis
Paralegal

Page 23 – CERTIFICATE OF SERVICE